**Ralph H. LITTLEJOHN, Jr., Plaintiff-Appellant,**

**v.**

**SHELL OIL COMPANY et al.,
Defendants-Appellees.**

**No. 71-2090.**

United States Court of Appeals,
Fifth Circuit.

March 22, 1972.

Coleman, Circuit Judge, dissented and filed opinion.

Jay M. Vogelson, Dallas, Tex., Thomas R. Hartnett, III, Irving, Tex., for plaintiff-appellant.

William Simon, Washington, D. C., Donald L. Case, Dallas, Tex., John S. Kingdon, Washington, D. C., for Shell Oil Co.; Howrey, Simon, Baker & Murchison, Washington, D. C., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., of counsel.

James C. Hamill, Oklahoma City, Okl., for Sooner Oil.

Khent H. Rowton, Dallas, Tex., Matthew J. Gallo, Chicago, Ill., for American Oil Co.; Kilgore & Kilgore, Dallas, Tex., of counsel.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

In this suit for damages under Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, Title 15, U.S.C., Section 13(a), the district court concluded that it was without subject-matter jurisdiction and granted summary judgment for the defendants, 326 F.Supp. 45. We hold that a complaint under the Robinson-Patman Act need not allege that one of the sales involved was interstate in character as long as it charges that interstate sales were used to underwrite allegedly discriminatory intrastate price-cutting tactics. Accordingly, we reverse the judgment of the court below and remand for further proceedings.

The plaintiff, Ralph H. Littlejohn, in his original and amended complaints, alleged that he operated an independent gas station under the trade name of Lynmar Oil Company in Garland, Texas, which is located in the north portion of Dallas County. Within half a mile were two other stations, one bearing the name of Shell Oil Company (Shell) and the other bearing the name of American Oil Company (American). Sooner Oil Company (Sooner) was joined as American's local wholesale dealer. In June, 1970, these stations began selling gasoline to the general public at reduced prices, one of them at 25.9¢ and the other at 26.9¢ per gallon. At the same time gasoline was being sold by other stations in the Dallas, Texas, area bearing the names Shell and American for 28.9¢ per gallon. Littlejohn says that he could not meet this kind of competition and that he was forced to close his station. The amended complaint also alleged:

"The profits of Defendants Shell Oil Company, American Oil Company and Sooner Oil Company derived from their interstate operations were wrongfully used by each of them to sell gasoline at the American Oil Company service station at Forest Lane and Plano Road and at the Shell Oil Company service station at Forest Lane and Plano Road at a lower price than each was selling gasoline to any other American Oil Company or Shell Oil Company service station in the Northeast Dallas area. In particular, Defendants American Oil Company and Shell Oil Company used profits which each of them derives from the overall large interstate producing and marketing business of each of them." (Paragraph IV.D, first amended complaint)

The original complaint was filed September 29, 1970. It alleged that Shell and American did business in interstate commerce but did not allege that the gasoline delivered to the Shell and American stations in Dallas County, Texas, had moved in interstate commerce or had involved as much as one sale in interstate commerce. On January 20, 1971, the district judge held a pretrial conference at which time he indicated his doubts about subject-matter jurisdiction. The result was that he gave Littlejohn until February 1, 1971, to file an amended complaint, briefs on subject-matter jurisdiction to be filed by February 22, 1971, and it was indicated that the court would try to rule on the issue by March 1, 1971. It was further directed that American, Sooner, and Shell should complete their discovery during March and April, 1971, while Littlejohn was to propound written interrogatories during March and April, and should take oral depositions in May and June, 1971.

The amended complaint, which included the above-quoted allegation concerning the defendants' interstate operations, was filed on February 1, 1971. Again, no sale made across state lines was alleged. On February 12, 1971, the defendants began to file motions for summary judg-

ment on the ground that the allegedly discriminatory sales were not made in interstate commerce and thus, as a matter of law, were not covered by the Robinson-Patman Act.[1] The motions were supported by affidavits which asserted that none of the gasoline involved had moved in interstate commerce, having been produced at refineries in Texas, and that there had been no sale across state lines.

On March 1, 1971, the plaintiff filed an unsworn response to the motions for summary judgment in which he urged that the motions of the defendants were premature, that the facts were not before the court in complete fashion, that the plaintiff had just recently initiated discovery with reference to jurisdictional facts by requesting the defendants to produce documents, and that the defendants had no right to keep their records, personnel and sources of information from the plaintiff when sought through reasonable discovery. The summary judgment motions were argued March 10, 1971. Thirteen days after argument was had, the parties submitted an agreement to the court below to the effect that the defendants would be relieved of the obligation to comply with the plaintiff's request for production of documents in the event the district judge granted the defendants' motions for summary judgment. The district court, pointing to the amended complaint's failure to allege an interstate sale of a discriminatory nature, on April 28, 1971, granted the defendants' summary judgment motions. It is from the grant of these motions that the plaintiff below entered this appeal.

We are called upon to resolve two points of law on this appeal: (1) does the United States Supreme Court's decision in Moore v. Mead's Fine Bread Company, 1954, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145, relieve the plaintiff of the burden of alleging and proving at least one discriminatory interstate sale? and (2) should the plaintiff be penalized (by affirmance of the lower court's judgment) because he did not respond to the defendants' motions for summary judgment by means of an affidavit (as required by Rule 56(f), Federal Rules of Civil Procedure)?

*Moore,* supra, was an action for treble damages for violations of the Clayton and Robinson-Patman Acts relating to price discrimination. Both parties were engaged in the bakery business in New Mexico, petitioner-plaintiff at Santa Rosa and respondent-defendant at Clovis. The Mead family interests controlled bakeries at several locations in New Mexico and Texas and employed integrated purchasing and marketing techniques. The respondent-defendant sold bread in Farwell, Texas, by means of truck deliveries from its Clovis, New Mexico, plant. From September, 1948, to April, 1949, respondent-defendant cut its prices in Santa Rosa, New Mexico, without cutting its prices anywhere else. As a result, petitioner-plaintiff was forced out of business. The district court entered judgment for the plaintiff and the Court of Appeals reversed. The Supreme Court, speaking through Mr. Justice Douglas, reinstated the district court's judgment. The following language from the Supreme Court's opinion in *Moore* is crucial to the disposition of this appeal:

1. Title 15, U.S.C. § 13(a) in pertinent part provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. . . ."

"We think that the practices in the present case are also included within the scope of the antitrust laws. We have here an interstate industry increasing its domain through outlawed competitive practices. The victim, to be sure, is only a local merchant; and no interstate transactions are used to destroy him. But the beneficiary is an interstate business; the treasury used to finance the warfare is drawn from interstate, as well as local, sources which include not only respondent but also a group of interlocked companies engaged in the same line of business; and the prices on the interstate sales, both by respondent and by the other Mead companies, are kept high while the local prices are lowered. If this method of competition were approved, the pattern for growth of monopoly would be simple. As long as the price warfare was strictly intrastate, interstate business could grow and expand with impunity at the expense of local merchants. The competitive advantage would then be with the interstate combines, not by reason of their skills or efficiency but because of their strength and ability to wage price wars. The profits made in interstate activities would underwrite the losses of local price-cutting campaigns. No instrumentality of interstate commerce would be used to destroy the local merchant and expand the domain of the combine. But the opportunities afforded by interstate commerce would be employed to injure local trade. Congress, as guardian of the Commerce Clause, certainly has power to say that those advantages shall not attach to the privilege of doing an interstate business." 348 U.S. at 119–120, 75 S.Ct. at 150, 99 L.Ed. at 149–150.

Following the *Moore* decision, several Courts of Appeals have taken the position that the language quoted above is merely dicta and that the plaintiff is still required to allege and prove an interstate discriminatory sale in order to state a claim under the price discrimination provisions of the Robinson-Patman Act. Frequently, this limited application of the *Moore* ruling has been buttressed by reference to the existence of interstate bread sales in that very case. See Food Basket, Inc. v. Albertson's, Inc., 10 Cir. 1967, 383 F.2d 785; Willard Dairy Corp. v. National Dairy Products Corp., 6 Cir. 1962, 309 F.2d 943, cert. denied 1963, 373 U.S. 934, 83 S.Ct. 1534, 10 L.Ed.2d 691; Central Ice Cream Co. v. Golden Rod Ice Cream Co., 7 Cir. 1961, 287 F.2d 265. This Court has never determined whether the Robinson-Patman Act requires the plaintiff to allege and prove an interstate sale of a discriminatory nature where interstate "underwriting" is charged.[2]

---

2. This Court's decision in Cliff Food Stores, Inc. v. Kroger, Inc., 5 Cir. 1969, 417 F.2d 203, cited by the court below, can be interpreted to have held, at least by dictum, that in order for jurisdiction to exist under the Robinson-Patman Act one of the challenged discriminatory sales transactions must have occurred in interstate commerce. *Cliff Food Stores*, however, is distinguishable from the matter now before us because in that case the plaintiff's attack was directed at allegedly unlawful price-cutting tactics in the sales of groceries to the general public. We determined that such sales were not "in commerce" for purposes of the Act, because the sales involved were of commodities which had "come to rest", and had lost their interstate character. In this case plaintiff Littlejohn specifically alleged:

"Defendants American Oil Company and Sooner Oil Company sold regular gasoline to the American Oil Company service station at Forest Lane and Plano Road at a price lower than which each of them charged for regular gasoline at all other American Oil Company service stations in the Northeast Dallas area during the period of which Plaintiff complains.

"Defendant Shell Oil Company sold regular gasoline to the Shell Oil Company service station at Forest Lane and Plano Road at a price lower than which each of them (sic) sharged for regular gasoline at all other Shell Oil Company service stations in the Northeast Dallas area during the period of which Plaintiff complains." (Paragraph IV.C, First Amended Complaint)

■ Until the Supreme Court explicitly repudiates the above-quoted language from Mr. Justice Douglas' opinion in *Moore*, we believe that a Robinson-Patman Act plaintiff should be entitled to proceed upon a theory that the interstate operations of the defendant or defendants were used to "underwrite" local discriminatory pricing practices. Consequently, we hold that the district court erred in granting the defendants' motions for summary judgment before the plaintiff had been afforded the opportunity to utilize discovery to develop basic jurisdictional facts from data solely within the defendants' possession. The district court's judgment must be reversed, in our opinion, even though the plaintiff did not oppose the summary judgment motions by means of an affidavit.

Rule 56(f), Federal Rules of Civil Procedure, provides:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Professor Moore, in his treatise on federal practice, asserts:

"Even where a proper showing has not been made under Rule 56(f), the court may order a continuance or make such other order as is just, where the opposing party has proceeded under some error of fact or law or for some other reason it would be unjust, under the circumstances of the case, to grant a summary judgment without allowing the opposing party an opportunity to present his opposing evidence." Moore's Federal Practice, Paragraph 56.24, page 2880.

As noted earlier in this opinion, the plaintiff filed a timely response to the defendants' motions for summary judgment. Although that response was not presented in the form of a sworn affidavit, it did adequately advise the court below of the plaintiff's reasons for opposing the grant of the motions. Under these circumstances, we deem it inappropriate to affirm the grant of summary judgment in favor of the defendants because of the plaintiff's failure to comply with the technical requirements of Rule 56(f). Court and opposing counsel were as fully apprised of the request for discovery and its purpose as if the response had been filed in affidavit form. Appending a *jurat* to the response would have contributed nothing to its substance.

In reversing the judgment of the district court, we express or imply no opinion whatsoever with respect to the merits of the case. We simply hold that the district court acted prematurely in foreclosing the plaintiff from further discovery regarding the interstate aspects of the defendants' operations, from the only meaningful source of such discovery, the defendants' records.

Because this case involves a challenge to the *wholesale* pricing policies of the defendants (as well as to the retail pricing policies), we believe that our *Cliff Food Stores* decision does not control subject-matter jurisdiction where, as here, "interstate underwriting" is alleged.

Brief consideration should be given to two other decisions cited by the district court. Our decision in Walker Oil Company, Inc. v. Hudson Oil Company of Missouri, Inc., 5 Cir. 1969, 414 F.2d 588, is distinguishable on the same basis as *Cliff Food Stores*. In Hiram Walker, Inc. v. A & S Tropical, Inc., 5 Cir. 1969, 407 F.2d 4, cert. denied 1969, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177, we held that a manufacturer of alcoholic beverages, who sold beverages in interstate commerce to wholesale distributors throughout the United States, who did not sell directly to retail stores, who did not fix prices or establish terms or conditions of resale, and whose activities were limited to promotional work by "missionary" men who provided retailers with advertising materials and generally acted to supplement a national advertising effort designed to promote the manufacturer's products, could not be held liable as a "seller" within the meaning of the Robinson-Patman Act. *Hiram Walker*, therefore, does not control the present case.

Reversed and remanded for further proceedings.

COLEMAN, Circuit Judge (dissenting).

With deference, the opinion of the majority is not only in conflict with the cited decisions from other Circuits but is, in my opinion, in conflict with prior decisions of this Circuit which have not been overruled en banc and hence are controlling.

Moore v. Mead's Fine Bread Company, discussed in the majority opinion, was decided by the Supreme Court in 1954. It is true that Mr. Justice Douglas, writing for the Court, did elaborate upon the use of interstate earnings, but Mead's had sold part of its bread in interstate commerce.

In 1969 we decided Hiram Walker, Incorporated v. A & S Tropical, 407 F.2d 4, cert. denied 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177. We there said, 407 F.2d 8, that the "Robinson-Patman Act is applicable only where the allegedly discriminatory transactions took place in interstate commerce [footnote omitted]." That is " * * * at least one of the two transactions which, when compared, generate a discrimination must cross a state line".

This holding was reaffirmed in A & M Stores, Inc. v. Hiram Walker, Inc., 5 Cir., 1970, 427 F.2d 167.

In Walker Oil Co. v. Hudson Oil Co. of Missouri, 5 Cir., 1969, 414 F.2d 588, 589, we again held that "under section 2(a) [of the Robinson-Patman Act] at least one or both of the sales alleged to be discriminatory must be 'in commerce'," citing Hiram Walker, Inc. v. A & S Tropical, supra.

In Cliff Food Stores, Inc. v. Kroger, Inc., 5 Cir., 1969, 417 F.2d 203, we reiterated that "at least one sale rule" and specifically *rejected* the argument that *Mead's Fine Bread* supports jurisdiction if the price cutting is financed by profits from multi-state operations.

Thus, I am at a loss to understand how my Brethren of the majority may overrule a prior decision of this Court, three years old, without *en banc* action.

I do not understand that newly retained counsel for Mr. Littlejohn really contends otherwise.

What he does say in his brief is:

"Littlejohn seeks by this appeal only the opportunity to conduct limited discovery in order to show that the discriminatory sales 'were in commerce'."

The background for this contention (reiterating some of the language in the majority opinion) may be stated as follows:

The original complaint was filed September 29, 1970. It alleged that Shell and American did business in interstate commerce but did not allege that the gasoline delivered to the Shell and American stations in Dallas County, Texas, (which includes Garland) had moved in interstate commerce or had involved as much as one sale in interstate commerce.

On January 20, 1971, the District Judge held a pretrial conference. He indicated his doubts about subject matter jurisdiction. The result was that he gave Littlejohn until February 1 to file an amended complaint, briefs on subject matter jurisdiction to be filed by February 22, and it was indicated that the Court would try to rule on the issue by March 1.

It was further directed that American, Sooner, and Shell should complete their discovery during March and April, 1971, while Littlejohn was to propound written interrogatories during March and April, and should take oral depositions in May and June.

Obviously, if the complaints came to dismissal for lack of subject matter jurisdiction (upon which a ruling was anticipated by March 1) that would end the case. Further discovery would be useless. The only reasonable interpretation to be put on the discovery portions of the Judge's order is that he was outlining the steps to be taken if the plaintiff's amended complaint should withstand dismissal.

The amended complaint was filed February 1, 1971. It failed to charge a sale made across a state line. It asserted that the defendant operated in interstate commerce but not that the gasoline in question had moved interstate.

On February 12, the defendants began filing motions for summary judgment on the ground that the allegedly discriminatory sales were not made in interstate commerce and thus, as a matter of law, were not covered by the Robinson-Patman Act. The motions were supported by affidavits. The plaintiff filed no counter-affidavit of any kind.

On March 1, plaintiff filed an unsworn "Response" to the motions for summary judgment. This response contended that summary disposition of anti-trust cases is not looked upon with favor, citing Cliff Food Stores v. Kroger, Inc., 5 Cir., 1969, 417 F.2d 203 at 205, that the motions for summary judgment were "premature", that the facts were not before the Court in complete fashion, that plaintiff had just recently initiated discovery with reference to jurisdictional facts by requesting the defendants to produce documents, and that the defendants had no right to keep their records, personnel, and sources of information from the plaintiff when sought through reasonable discovery.

The motions for summary judgment were argued March 10, 1971.

On March 23, 1971, by copy of a letter the parties notified the Judge of their agreement that objections to production of documents would not be presented until such time as the motions for summary judgment had been decided. Paragraph 2 of this letter memorandum of agreement contained the following language:

"If the Court sustains any of the Defendants' motions, thus dismissing Plaintiff's claims against the same so that such Defendant is no longer before the Court after such ruling, then the Defendant or Defendants so situated shall be under no obligation or duty to comply with Plaintiff's Requests for Production of Documents in any manner."

On April 28, 1971, the District Court granted summary judgment, citing Walker Oil Company, Inc. v. Hudson Oil Company of Missouri, Inc., 5 Cir., 1969, 414 F.2d 588; Cliff Food Stores, Inc. v. Kroger, Inc., 5 Cir., 1969, 417 F.2d 203; Food Basket, Inc. v. Albertson's, Inc., 10 Cir., 1967, 383 F.2d 785; and Hiram Walker, Inc. and South Florida Liquor Distributor, Inc. v. A & S Tropical, Inc., 5 Cir., 1969, 407 F.2d 4.

In *Cliff Foods, supra,* this Court held that to maintain an action under § 2(a), the plaintiff must do three things:

1. Allege and prove that the defendant is engaged in interstate commerce;

2. Allege and prove that the challenged discrimination was committed in the course of the defendant's interstate commerce; and

3. Allege and prove that at least one of the challenged discriminatory sales transactions occurred in interstate commerce.

The issue for decision, then, is whether the District Court erred in granting summary judgment before Littlejohn could complete the discovery procedures he now contends that he should have been permitted to complete.

In his reply brief, Littlejohn says that the agreement for the extension of time for the filing of objections to request for documents was a courtesy to an opposing attorney, who was ill. We observe, however, that such a courtesy would not have suggested a proviso that nothing would have to be produced at any time if summary judgments were granted for the defendants.

Littlejohn says that his pretrial deposition revealed that the required evidence as to the interstate character of the sales was solely within the private knowledge of the defendants and that he should have been allowed to complete discovery but concedes in his brief, "Littlejohn cannot, of course, advise the Court what evidence will be adduced".

I think that if appellant really desired to insist on further discovery before action on the motions for summary judgment he should have looked to § 56(e) and § 56(f) of the Federal Rules of Civil Procedure:

"Section 56(e):

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him." [Emphasis added].

"Section 56(f):

"Should it appear *from the affidavits of a party opposing the motion* that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." [Emphasis added].

Littlejohn did not take refuge in these rules. He did nothing but resist the motion for summary judgment in general terms. He filed no counter-affidavits. He thus failed to comply with Rule 56 (e) as to any genuine issue of fact. He now tells this Court that he does not know what evidence might be produced if the summary judgments were to be vacated and remanded for discovery procedures. The complaint failed to allege an indispensable jurisdictional prerequisite, that is, at least one sale in interstate commerce. May a litigant file a complaint which on its face is insufficient for sub-

ject matter jurisdiction and, despite uncontroverted affidavits showing lack of jurisdiction, stall off summary judgment so as to pursue discovery which may or may not turn up jurisdictional facts, and that without following the procedure prescribed by Rule 56(e) and Rule 56(f)?

Even in a Robinson-Patman suit I do not think he can, see White Motor Company v. United States, 372 U.S. 263, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); Lundeen v. Cordner, 8 Cir., 1966, 356 F.2d 169; Robin Construction Company v. United States, 3 Cir., 1965, 345 F.2d 610; and Liberty Leasing Company v. Hillsum Sales Corp., 5 Cir., 1967, 380 F.2d 1013.

In *Robin* it was said:

"It is true that Rule 56(f) also authorizes the court in appropriate cases to refuse to enter summary judgment where the party opposing the motion shows a legitimate basis for his inability to present by affidavit the facts essential to justify his opposition; but to take advantage of this provision he must state by affidavit the reasons for his inability to do so and these reasons must be genuine and convincing to the court rather than merely colorable. It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts." 345 F.2d at p. 614.

In our case of Liberty Leasing Company v. Hillsum Sales, *supra*, we said that the least a party opposing a motion for summary judgment should do is to file an affidavit pursuant to Rule 56(f).

Under all the considerations herein recited I cannot agree that the District Court fell into error in granting summary judgment for the defendants.

I respectfully dissent.