Ralph H. **LITTLEJOHN, Jr.,** Plaintiff-Appellant,

v.

**SHELL OIL COMPANY et al.,**
Defendants-Appellees.

No. 71–2090.

United States Court of Appeals,
Fifth Circuit.

Aug. 10, 1973.

Certiorari Denied Dec. 17, 1973.
See 94 S.Ct. 849.

---

Jay M. Vogelson, Dallas, Tex., Thomas R. Hartnett, III, Irving, Tex., for plaintiff-appellant.

William Simon, John S. Kingdon, Washington, D. C., Donald L. Case, Dallas, Tex., for Shell Oil Co.

Khent H. Rowton, Dallas, Tex., for American Oil Co.

Charles H. Gullett, Denison, Tex., for Sooner Oil Co.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GODBOLD, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.*

BELL, Circuit Judge:

The judgment of the district court dismissing the claim asserted by plaintiff Littlejohn under § 2(a) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(a), was reversed by a panel decision of this court. Littlejohn v. Shell Oil Company, 5 Cir., 1972, 456 F.2d 225. Upon consideration of the cause en banc, we vacate the panel decision for reasons to be hereinafter stated.

In sum, we affirm the ruling of the district court that it was without subject matter jurisdiction under the Act absent proof that at least one of each of defendants challenged sales transactions occurred in commerce.[1] We disagree with the panel majority that the interstate sale requirement of the Act may be satisfied by showing the use of profits derived from interstate commerce to underwrite the local price cutting activity. To this extent, we are in agreement with the views of the dissenting members of the panel. We do agree, however, with the majority of the panel that the discovery proceedings were truncated, albeit inadvertently. We thus vacate the judgments of dismissal and remand with direction that plaintiff be allowed a reasonable period of time within which to complete his discovery but on conditions to be stated in Part III, infra.

Plaintiff alleged that he operated an independent gas station in Garland, Texas which is in the northern portion of Dallas County. He also alleged that defendants, through two other stations within one half mile of his station, one selling the products of Shell Oil Company and the other selling the products of American Oil Company, began to sell gasoline to the general public in June 1970 at prices reduced below his selling price although defendants were selling, respectively, Shell and American gasoline, to other dealers in the general Dallas area at normal prices. He alleged that the purpose of defendants in so doing was to drive him out of business and that he was, in fact, forced to close

---

* Judges Goldberg, Ainsworth, and Dyer did not participate in the consideration of this case.

1. Title 15 U.S.C. § 13(a) in pertinent part provides:
"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, *where either or any of the purchases involved in such discrimination are in commerce*, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. . . . ."
(Emphasis added)

his station because he could not meet the competition engendered by the low prices being charged at the two stations.[2]

The original complaint alleged that Shell and American were marketing gasoline in interstate commerce. There was no allegation, however, that the gasoline delivered to the Shell and American stations in the Dallas area had moved in interstate commerce, or that, with respect to each defendant, at least one sale in interstate commerce was involved. Some months later plaintiff amended his complaint to amplify on his original allegation that profits of defendants Shell and American, derived from their interstate operations, were used by each of them to support their acts of selling gasoline to plaintiff's competitors at the two stations in question at lower prices than were being charged by them to other Shell and American stations in the Dallas area. The amended complaint alleged that Sooner, a Texas corporation with its principal place of business in Oklahoma, was engaged in interstate commerce and was also using its interstate profits to support the price cutting in question.

As distilled, we conclude that at this point, plaintiff had alleged a classic case of violation of § 2(a) by discrimination in sales at wholesale by sellers to their purchasers who competed with plaintiff, and with resulting injury to his business within the contemplation of § 4 of the Clayton Act. 15 U.S.C.A. § 15. See Fn. 3, infra.

Defendants duly answered. Meanwhile the district court conducted a pre-trial conference and became aware of the possible lack of subject matter jurisdiction in view of the absence of an allegation that, as to each defendant, at least one of the contended discriminatory sales was in interstate commerce. All parties filed briefs on the question. Plaintiff did not allege such interstate sales but relied instead, in the main, on "the use of interstate profits to underwrite" theory expressed in Moore v. Mead's Fine Bread, 1954, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145. Each defendant filed an affirmative defense on the ground that none of the sales were in interstate commerce and thus the issue was clearly drawn. The district court then granted summary judgment for each of the defendants on the basis of the absence of subject matter jurisdiction.[3]

### I.

In reaching decision on the Robinson-Patman Act coverage question which is presented, we must have in mind the difference between the reach of the Sherman Act, 15 U.S.C.A. §§ 1–4, and the reach of § 2(a) of the Robinson-Patman Act, 15 U.S.C.A. § 13(a). We pointed out the difference in Lehrman v. Gulf Oil Company, 5 Cir., 1972, 464 F.2d 26, 36–37, as modified on rehearing. There we quoted from Cliff Food Stores, Inc. v. Kroger, Inc., 5 Cir., 1969, 417 F.2d 203, 208–209, in saying:

"To maintain an action under Section 13(a) the plaintiff must allege and prove, inter alia: (1) That the defendant is engaged in commerce; (2) that, in the course of such commerce, the defendant has discriminated in price between different purchasers of commodities of like grade and quality; (3) that *either or any of the purchases involved in such discrimina-*

---

2. Sooner Oil Company was joined as American's jobber in the Dallas area.

3. We put aside the alternative theory of the district court that the plaintiff was not possessed of standing under § 2(a) to sue. The reasoning was that the purpose of § 2(a) was to prevent injury to purchasers from the discriminatory pricing policies of the same seller. This is only one purpose of the Act. It is settled that the Act also grants protection to a competitor whose business is injured by the discriminatory pricing policies. Utah Pie Company v. Continental Baking Company et al., 1967, 386 U.S. 685, 87 S.Ct. 1326, 18 L.Ed.2d 406; Moore v. Mead's Fine Bread, supra. See history of Act in Federal Trade Commission v. Anheuser-Busch, Inc., 1960, 363 U.S. 536, 80 S.Ct. 1267, 4 L.Ed.2d 1385.

*tion are in commerce*'; and (4) that there is likely to be a severe, adverse effect on competition. (Emphasis added.) 15 U.S.C. § 13(a). The language of Act—requiring discriminatory sales to be 'in commerce'—is far narrower in scope than the 'effect on commerce' test applicable under the Sherman Antitrust Act. *See, e. g.,* Foremost Dairies, Inc. v. FTC, 5th Cir. 1965, 348 F.2d 674; Jones v. Metzger Dairies, Inc., 5th Cir. 1964, 334 F.2d 919. In appropriate cases, the Sherman Act may be applied to intra-state activities, including retail sales, if they *affect* interstate commerce. *See, e. g.,* United States v. Greater Kansas City Retail Coal Merchants' Ass'n, W.D.Mo.1949, 85 F. Supp. 503. Under the terms of section 13(a), however, at least one of the sales alleged to be discriminatory must actually be *in* interstate commerce. Walker Oil Co. v. Hudson Oil Co., 5th Cir. 1969, 414 F.2d 588 [Dated July 8, 1969]. In Hiram Walker, Inc. v. A & S Tropical, Inc., 5th Cir. 1969, 407 F.2d 4 [Dated January 31, 1969], this Court stated:

> "[I]n order to come within the provisions of the Robinson-Patman Act, the [plaintiff] must demonstrate that the discriminatory sales were 'in commerce.' * * * Thus, the Robinson-Patman Act, is applicable only where the allegedly discriminatory transactions took place in interstate commerce. That is, '* * * at least one of the two transactions which, when compared, generate a discrimination must cross a state line.'

*See also* Borden Company v. FTC, 7th Cir. 1964, 339 F.2d 953; Willard Dairy Corp. v. National Dairy Products Corp., 6th Cir. 1962, 309 F.2d 943."

■ Taking the *Lehrman* opinion and the *Cliff Food Stores* language as a text,

it is plain that plaintiff failed to allege the sine qua non of subject matter jurisdiction, that at least one of the sales involved in the alleged discrimination by the defendants, i. e., between the defendants and their respective Dallas gasoline dealers, was in interstate commerce. This much is conceded by plaintiff.[4]

## II.

■ The question remains whether the holding of the Supreme Court in Moore v. Mead's Fine Bread Company, supra, creates an exception to the statutory requirement that there be at least one discriminatory interstate sale.

It is here that we disagree with plaintiff and with the panel decision. The exception would purportedly rest on the theory of the discriminator using profits from interstate activities to underwrite the losses sustained in driving a competitor out of business through local price-cutting. There is a statement to this effect in Moore v. Mead's Fine Bread, 348 U.S. at 119–120, 75 S.Ct. at 150. The statement has, however, generally been treated as dictum. See e. g., Cliff Food Stores, Inc. v. Kroger, Inc., supra, 417 F.2d at 209; Willard Dairy Corp. v. National Dairy Products Corp., 6 Cir., 1962, 309 F.2d 943; Central Ice Cream Co. v. Golden Rod Ice Cream Co., 7 Cir., 1961, 287 F.2d 265; Food Basket, Inc. v. Albertson's, Inc., 10 Cir., 1967, 383 F.2d 785; Belliston v. Texaco, Inc., 10 Cir., 1972, 455 F.2d 175.

This view of the Moore v. Mead's Fine Bread case follows from the facts of that case which demonstrate that the commerce requirements necessary to establish § 2(a) jurisdiction were satisfied, i. e., (1) the defendant was engaged in commerce; (2) the defendant had discriminated in price between different purchasers of commodities of like grade and quantity; and (3), that one of the purchases involved in such discrimination was in commerce. It is to

---

4. It is not conceded that facts which might be discovered would not be sufficient to prove one or more interstate sales and thus support an amendment to the pleadings, or that it was necessary, under notice pleading concepts to allege more than jurisdiction generally under § 2(a) as was done.

be noted that proposition numbered (3) was not lacking. This much appears from a statement in the opinion. The price cutting against the competitor was in New Mexico but the discriminator was selling at a higher price in Texas out of its same New Mexico bakery. Moore v. Mead's Fine Bread is a landmark case in that it explicated the coverage of § 2(a) to protect the competitor of a purchaser who purchased from one seeking to destory the competitor by price cutting. The case did not, however, alter or extend the specific jurisdictional requirements of § 2(a).[5]

### III.

Lastly, we come to the question whether plaintiff is precluded from further opportunity to allege and prove that at least one of the sales to be compared to show discrimination by one or more of the defendants was in interstate commerce. Ordinarily, summary disposition of antitrust cases is fraught with danger. Cliff Food Stores, Inc., supra, 417 F.2d at 205. But, as there, summary judgment may be appropriate where the facts involved in a determinative issue of law are clear, undisputed or unrefuted.

As was pointed out in the panel opinion, majority and dissenting opinions, 456 F.2d at 229, 231–232, plaintiff failed to counter the affidavits of defendants filed in support of their motions so as to make out a fact issue on the interstate sales question. See Rule 56(e), F.R. Civ.P., on the requirement to make a counter showing.

The problem is procedural. This case was handled procedurally in the latter-day trial concept of notice pleading, discovery, pre-trial conference or conferences, and motions, with a trial to follow only if all else fails. The fatality rate in summarily disposing of litigation in this manner is high indeed, and largely the result of prematurity through inordinate attention to theories of law at a time when the facts have not been fully developed.

Here the legal theories going to jurisdiction were clear. The problem, known to all once issue was joined, was whether there had been interstate sales. The defendants were insistent that there had not been. Somehow, in addition to the usual prolix non-trial proceedings, here the case was bifurcated or at least disjointed to the extent that the court intended throughout to pass on the motions for summary judgment without regard to the ongoing discovery proceedings. Plaintiff's position was that he could not show interstate sales without discovering the facts from defendants to show such sales. He filed requests for documents to this end. He requested that the court forego ruling on the motions pending the completion of discovery. The court did not rule on the request but granted the motions.

The matter is clouded by an out of court agreement recorded in a letter from counsel for American to the other counsel in the case. Under the agreement, discovery was to be postponed pending the ruling on the motions for summary judgment.

There had been a previous letter agreement between the parties as to the order of discovery and this agreement was the result of a pre-trial conference in January. Defendants were to complete their discovery during March and April. Plaintiff was not to commence his discovery until March 1 and his request for documents was filed on March 1. On March 19 counsel for Sooner asked for a thirty day extension within which to comply with the request for production of documents on the ground that he was in the hospital. On March 23, counsel for American wrote the joint

---

5. The panel opinion in *Littlejohn* has attracted the attention of the case note writers. See in support of the panel opinion, 41 Cincinnati L.Rev. 689. Contra, 86 Harv.L.Rev. 765. Dubitante, 26 Vand. L.Rev. 146, 4 St. Mary's L.J. 204.

letter in question to plaintiff's counsel, counsel for Shell, and counsel for Sooner, stating that they had discussed the matter of producing the documents and, in substance, that the court would proceed to rule on the motions for summary judgment prior to compliance with the request for production. The difficulty for plaintiff is that the last paragraph of the letter stated that no production would be required as to any defendant who was dismissed on motion for summary judgment.[6] Not a single document had been produced. The court granted summary judgment on April 28, 1971.

The question of foreclosing plaintiff by this letter addressed to his counsel is close. Out of an abundance of caution and to prevent a possible injustice, we conclude that Rule 56(f), F.R.Civ.P., is applicable in view of plaintiffs definite position, stated in writing by his counsel to the court, that he could not show interstate sales so as to support subject matter jurisdiction without being able to discover facts from the defendants, and his request to postpone adjudication until he could discover. Rule 56(f) provides:

> "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

It is true that this representation was not in affidavit form by plaintiff in person but we think that the written representation by his lawyer, an officer of the court, is in the spirit of Rule 56(f)

under the circumstances. Form is not to be exalted over fair procedures.

■ We thus vacate the summary judgments in favor of defendants but with the following caveat. Shell has contended by affidavit that its gasoline sold in the Dallas area came from Texas refineries. American states that it acquired the gas which it sold to Sooner in Dallas, and in turn sold to Sooner in Texas as jobber. Without more it would appear from these statements that plaintiff will be hard put to show interstate sales but we think that he should be given the opportunity to discover in an effort to make such proof. We hold however that his discovery must be limited in scope as follows: Plaintiff must first amend his complaint to specifically allege that at least one of the sales in question with respect to each defendant was in commerce, and his discovery must then be directed and limited to seeking proof in support of that jurisdictional allegation.

In addition to the alternative holding by the district court that plaintiff had no standing, discussed supra, there was another holding that plaintiff had failed to demonstrate injury. This holding was entirely premature and is vacated. The motions for summary judgment were limited to the subject matter jurisdiction question and, as has been stated, even these motions came on for disposition before plaintiff could have his day in discovery.

Affirmed in part; vacated in part; remanded for further proceedings not inconsistent herewith.

JOHN R. BROWN, Chief Judge (concurring in part and dissenting in part):

I join in Judge Simpson's opinion and thereby Part III of Judge Bell's opinion.

---

6. "The intent of the Parties to said suit is that a Defendant with respect to which Plaintiff's suit is dismissed upon the Motions now before Judge Hill shall be required to produce nothing and object to nothing. Defendants with respect to

which the Plaintiff's suit is not so dismissed shall comply with Plaintiff's Requests for Production of Documents and/or objects to all or part thereof in the manner stated above."

I would add only that whether the panel could have reversed the case in view of the prior Fifth Circuit decisions, those decisions are wrong and, ought to be specifically overruled on the basis of *Moore*.

SIMPSON, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, WISDOM, GODBOLD and LEWIS R. MORGAN, Circuit Judges, join (concurring in part and dissenting in part):

I adhere to the views and holdings of my opinion for Judge Wisdom and myself, the majority of the panel by which this case was originally decided. Littlejohn v. Shell Oil Company et al., 5 Cir. 1972, 456 F.2d 225.

On that basis, I concur in Part III of Judge Bell's opinion for the en banc court, remanding this case to the district court to permit amendment to the plaintiff-appellant's complaint and to allow him additional discovery from the defendants-appellees for the purpose of developing proof of one or more discriminatory sales in interstate commerce.

On the same basis, viz: the views expressed in my original panel opinion, I respectfully dissent from Parts I and II of the en banc court's opinion by Judge Bell. I would continue to hold that Robinson-Patman[1] subject matter jurisdiction was present by virtue of the allegations of the amended complaint that Shell Oil Company, American Oil Company and Sooner Oil Company used profits from interstate gasoline sales to underwrite discriminatory intrastate price-cutting tactics employed against Littlejohn, the plaintiff-appellant, without requiring any allegations that one or more discriminatory sales were in interstate commerce. As stated in the panel majority opinion, I construe this to be the teaching of Moore v. Mead's Fine Bread Company, 1954, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145.

CLARK, Circuit Judge, with whom GEWIN, THORNBERRY and INGRAHAM, Circuit Judges, join concurring in part and dissenting in part:

I concur without reservation in parts I and II of the majority opinion prepared by Judge Bell for the en banc court. I respectfully dissent from part III both because I believe it faults the district judge for what was a mistake in trial tactics which plaintiff now wants to second guess and because it undercuts Fed.R.Civ.P. 56.

Since Judge Coleman's dissent to the panel opinion deals in detail with the actions of counsel and the chronological context into which the procedural question is cast, it is unnecessary to do more here than touch the high spots. Plaintiff's only indication to the court that he needed to pursue discovery to defend against the motions for summary judgment was couched in the vaguest possible terms. It was contained in his initial responsive pleading to the motions and was in this language:

> Plaintiff would *suggest* that consideration by the Court of summary judgment motions at this early stage of the litigation is premature. The facts related to subject matter jurisdiction are certainly *not before the Court in any complete fashion*. Plaintiff has just recently initiated discovery with respect to jurisdictional facts by service on the Defendants of Requests for Production of Documents Related to Subject Matter Jurisdiction pursuant to F.R.C.P. 34. (Emphasis added)

Following this pleading all counsel reached an agreement which was cast into the form of a letter, *a copy of which was delivered to the court*. This letter agreement unqualifiedly provided that no discovery would proceed until after the court's rulings on the then pending motions for summary judgment had been resolved. A copy of this letter

---

1. § 2(a) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a).

is set out in the margin.[1] Suffice it to say that at least the trial court could reasonably have thought all counsel were then requesting that he proceed to rule on the summary judgment motions without awaiting the results of discovery.

Rule 56(f) is precise and unequivocal. A party who opposes a motion for summary judgment but cannot supply the factual basis for his opposition without the aid of discovery must make his problem known to the court by an affidavit. It is unnecessary here to reach the issue as to whether 56(f) mandates that the showing be under oath, since the substance of what was initially disclosed was so equivocal, and since even this equivocation was wholly destroyed by the later agreement to forgo discovery.

The plaintiff simply failed to comply with the spirit or the letter of this part of the Rule.

It well may be that a trial court might choose to overlook such a serious procedural shortcoming or a tactical agreement which hindsight has shown to be bad. Clearly, that court could determine that a just presentation of the issues of a particular case required further pursuit of discovery processes notwithstanding the fact that all counsel may agree not to follow such a course. However, no such broad prerogative properly appertains to an appellate court. Subject to rare exceptions calling for supervisory intervention (which does not extend to adjudging that a trial court has abused its discretion when it does no

---

1. Re: Agreement as to Time for Objecting to or Complying with Plaintiff's Requests for Production of Documents in CA–3–4195–B Littlejohn v. Shell Oil Company et al.

Gentlemen:

I am writing to set forth our agreement with respect to the Requests for Production of Documents ("Requests") pursuant to Fed.R.Civ.P. 34 served by the Plaintiff in the above styled and numbered cause upon Defendants Shell Oil Company, The American Oil Company and Sooner Oil Company in the latter part of February, 1971. As you know, all three Defendants in said Cause filed *Motions for Summary Judgment and* oral motions under Fed.R.Civ.P. 12(b) which are now pending before Judge Hill.

I have discussed the matters hereinafter set forth with each of you with the exception of James C. Hamill, Esq., attorney for Sooner. I have talked to Kenneth Mayfield, Esq., an attorney in Mr. Hamill's firm who is in contact with Mr. Hamill and who has confirmed that Mr. Hamill approves the terms of our agreement and that Sooner will comply therewith. Each of you and I agree to the following procedure as to the timing for objecting to and/or complying with the Requests of the Plaintiff:

1. If the Court overrules any of the three Defendants' Motions for Summary Judgment or motions under Fed. R.Civ.P. 12(b), thus leaving one or more Defendants before the Court in said Cause, then, each of such Defend-

ants still before the Court after such ruling shall:

(a) File in writing any objections such Defendant may have to Plaintiff's Request for Production of Documents served upon it within seven (7) days after the entry of the Court's Order so overruling such Defendant's Motions; and

(b) Within thirty (30) days after the entry of the Order so overruling such Defendant's motions, comply with Plaintiff's Request for Production of Documents with respect to all of the items enumerated in such Request which the Defendant does not object to within seven (7) days (as set forth above) in accordance with the Federal Rules of Civil Procedure.

2. If the Court sustains any of the Defendants' motions, thus dismissing Plaintiff's claims against the same so that such Defendant is no longer before the Court after such ruling, then the Defendant or Defendants so situated shall be under no obligation or duty to comply with Plaintiff's Requests for Production of Documents in any manner.

The intent of the Parties to said suit is that a Defendant with respect to which Plaintiff's suit is dismissed upon the Motions now before Judge Hill shall be required to produce nothing and object to nothing. Defendants with respect to which the Plaintiff's suit is not so dismissed shall comply with Plaintiff's Requests for Production of Documents and/or object to all or part thereof in the manner stated above.

more than honor an agreement of counsel to postpone discovery), this court's function is to correct the errors of judges not lawyers.

I would affirm every aspect of this case.