**AAA TIRE FINISHING EQUIPMENT & SUPPLIES, INC.**

v.

**TIRE COSMOTOLOGY, INC., et al.**

Civ. A. No. 81–365.

United States District Court,
E.D. Louisiana.

April 17, 1984.

Irwin R. Sanders, Metairie, La., for plaintiff.

E. Wayne Walker, Metairie, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

The circumstances surrounding this controversy are, to say the least, somewhat obscure. Two corporations and one individual are named defendants in the suit but only the individual, Jim Satterfield, exists at this time—though he has never appeared before the Court. One of the corporate defendants, Quality Whitewall Chemicals, was an assumed name used by Satterfield to market a product made by the other corporate defendant, Tire Cosmotology, Inc., also owned and run by Satterfield. This suit involves alleged anti-trust violations which occurred when Satterfield promoted a predatory pricing scheme using the name Quality Whitewall Chemicals to undercut the price of an identical product sold by the plaintiff in an attempt to gain a monopoly on the market. At trial, plaintiff produced only one witness, Mr. Roy Williams, the president and principal stockholder of the plaintiff corporation. Defendants' case was completed upon cross examination of Mr. Williams.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. Plaintiff, AAA Tire Finishing Equipment & Supplies, Inc. (AAA), is a corporation organized and existing under the laws of the State of Louisiana and engaged in the business of manufacturing and selling machinery and supplies used in the application of whitewalling materials to the tires of automobiles and trucks. AAA first entered this business in 1973 and now sells its products on a national scale.

2. Defendant, Tire Cosmotology, Inc., is a corporation organized and existing under the laws of the State of Texas and has its principal place of business in Dallas, Texas. It is engaged in the manufacture and sale of tire customizing equipment, including machinery to apply whitewalls to automotive tires. Tire Cosmotology also sells the supplies used by its machinery and has been engaged in this business on a national scale since 1976. Tire Cosmotology and AAA have recognized each other as competitors over the years, both vying for the other's share of a rather limited market.

3. Defendant, Quality Whitewall Chemicals (Quality), is an assumed name under which Jim Satterfield, the president and sole shareholder of Tire Cosmotology, marketed certain supplies used in the tire whitewalling and customizing process. The principal product marketed by Quality was a "Polymer," the substance applied to a tire to create a whitewall. This same product was produced and sold by Tire Cosmotology and AAA.

4. Satterfield created Quality in 1979 apparently for the sole purpose of marketing a similar, if not the actual, polymer produced and sold by his other corporation, Tire Cosmotology. The polymer was sold under this assumed name for approximately one year through a national marketing scheme which included advertisements in trade journals, fliers mailed to businesses related to the tire industry, and post cards sent to individuals.

5. In this suit, plaintiff, AAA, contends that Satterfield, doing business as Tire Cosmotology, created Quality for the specific purpose of driving AAA out of the market place by selling a polymer identical to that being sold by AAA at a price below cost. As evidence of this predatory pricing scheme, AAA has produced a flier mailed by Quality to potential customers announcing a "special introductory offer" in which Quality's complete line of tire refinishing and whitewalling chemicals are offered at substantial price reductions. More specifically, Quality offers its polymer, which it states regularly sells for $37.00 a gallon, for only $19.95 a gallon. AAA sells its polymer, which it claims to be nearly identical to that sold by Quality, for $39.50 per gallon. Tire Cosmotology sells the same polymer for $59.95 per gallon.

6. It appears that Satterfield ceased marketing his polymer under the assumed name of Quality within one year of its inception. Tire Cosmotology seems to have been dissolved by Satterfield after the bank foreclosed on its loans to the corporation some time in February, 1981. Other evidence indicates, however, that Satterfield has maintained the use of the name "Tire Cosmotology" even after the corporation was financially unable to continue in operation.

### Conclusions of Law

1. The Court has jurisdiction over this controversy which arises under the Sherman Act, 15 U.S.C. § 2 et seq., the Clayton Act, 15 U.S.C. § 13 et seq. and the Robinson-Patman Act, 15 U.S.C. § 13a et seq.

2. The Sherman Act § 2, 15 U.S.C. § 2, provides:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor...."

3. Plaintiff's claim to damages arises under section 4 of the Clayton Act, which provides that:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15.

■ 4. In meeting its burden of proof under section 4, plaintiff must prove (1) a violation of the anti-trust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage. *Chrysler Credit Corp. v. J. Truett Payne, Inc.,* 607 F.2d 1133, 1135 (5th Cir.1979); *Lee Moore Oil Co. v. Union Oil Co.,* 599 F.2d 1299, 1306 (4th Cir.1979).

To satisfy (1) above, plaintiff alleged and attempted to show at trial that it was a victim of defendants' attempt to gain a monopoly of certain tire customizing product markets through predatory pricing.

■ 5. Predatory pricing violates § 2 of the Sherman Act, 15 U.S.C. § 2, when there is an attempt to monopolize, *see United States v. American Tobacco Co.,* 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663 (1911); § 2 of the Clayton Act, 15 U.S.C. § 13, when the predation includes price discrimination, *see Moore v. Mead's Fine Bread Co.,* 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145 (1954) and § 3 of the Robinson-Patman Act, 15 U.S.C. § 13a under any circumstances. The issues, with regard to predation are the same under all those provisions. *Malcolm v. Marathon Oil Co.,* 642 F.2d 845, 853 n. 16 (5th Cir.1981).

■ 6. Predatory pricing differs from healthy competitive pricing in its motive: a predator by his pricing practices seeks to impose losses on other firms, not to gain for himself. For such a practice to violate the anti-trust laws, however, there must be, in addition to proof of price differences, evidence sufficient to support a finding that the lower price, in the market area in which it occurred, did substantially lessen competition, or tended to create a monopoly. A price discrimination within the meaning of the anti-trust laws is simply a price difference, *F.T.C. v. Anheuser-Busch, Inc.,* 363 U.S. 536, 549, 80 S.Ct. 1267, 1274, 4 L.Ed.2d 1385 (1960), but price discrimination is not illegal per se, *Continental Baking Co. v. Old Homestead Bread Co.,* 476 F.2d 97, 103 (10th Cir.1973). Encouraging competition while at the same time forbidding anti-competitive behavior often requires walking a fine line.

7. In *Atlas Building Prod. Co. v. Diamond Block & Gravel Co.,* 269 F.2d 950, 954 (10th Cir.1959), the Court said:

"... Antitrust legislation is concerned primarily with the health of the competitive process, not with the individual competitor who must sink or swim in competitive enterprise. But as a necessary incident thereto, it is concerned with preda-

tory price cutting which has the effect of eliminating or crippling a competitor."

8. By the express wording of the antitrust statutes, the effect on competition must be substantial. Trivial, remote, or inconsequential effect is not enough. "There must be something more than an essentially temporary minimal impact on competition." *American Oil Company v. F.T.C.*, 325 F.2d 101, 106 (7th Cir.1963). *See also, Continental Baking Company v. Utah Pie Company*, 349 F.2d 122, 150 (10th Cir.1965). "It is settled law that a mere diversion of business from one competitor to another does not signify detriment to competition on the seller level." *International Air Ind., Inc. v. American Excelsior Co.*, 517 F.2d 714 (5th Cir.1975) (hereinafter referred to as *International Air*).

9. In *International Air, supra*, the Fifth Circuit reviewed the burden of proof required of a plaintiff claiming damage under the antitrust laws for price discrimination. It noted that the mere loss of profits indicated nothing more than the fact that plaintiff was forced to charge a competitive price because it was faced with competition. A showing of more than competitive pricing and a shift of customers was necessary. "Evidence of certain types of predatory conduct, we feel, would fulfill the requirements." *Id.* at 722. The Court went on to address the problem of determining "predatory intent" and eventually applied a "cost-based" test as opposed to a "subjective intent" test, to analyze the discriminator's purpose. *Id.* at pp. 722–725.

10. In applying the "cost-based" test to the facts before it, the Court in *International Air* concluded:

"Thus, even if a monopolist is price discriminating, we will not infer damage to competition as a matter of law if the firm is charging a short-run, profit-maximizing price (above average variable cost) in the market in which it faces competition. And, even if its price is below this level, we will not infer damage to competition if the firm's price discrimination has beneficial effects or insignificant effects in the competitive market. *In short, in order to prevail as a matter of law, a plaintiff must at least show that either (1) a competitor is charging a price below his average variable cost in the competitive market or (2) the competitor is charging a price below its short-run, profit-maximizing price and barriers to entry are great enough to enable the discriminator to reap the benefits of predation before new entry is possible."* (Underlining added.)

*Id.* at p. 724. While this discussion was directed to the elements necessary to sustain a motion for directed verdict, it is mentioned here for the limited purpose of indicating the complexity of the issues and the substantial weight of the burden placed upon the plaintiff in supporting a predatory pricing claim.

11. Turning to the facts in the record before us, this Court has no choice other than to conclude that the plaintiff has failed to meet this burden. In fact, the entirety of plaintiff's claim is based upon mere allegations and unsupported charges. As mentioned previously, the only witness to testify on plaintiff's behalf was the president and principal shareholder of plaintiff corporation. His testimony was that he became aware of plaintiff's selling tactics when he received one of Quality's fliers in the mail. As mentioned previously, that advertisement announced a special introductory offer price of $19.95 per gallon for Quality's polymer. Mr. Williams then testified that the polymer sold by his company was basically the same as that sold by Quality although he admitted that he had not tested the product. He also stated that he produced his polymer for approximately $15.00 per gallon and did not believe that Quality could cover its costs selling its polymer for only $19.95 per gallon, although again he admitted not knowing the specific costs of the component ingredients of Quality's polymer or its overhead costs.

Furthermore, the record is totally void of such critical information as the duration of defendant's marketing scheme, its impact on the industry, and defendant's success (or lack thereof) in gaining a monopoly.

Plaintiff attempted to make a requisite showing of its damages resulting from Quality's alleged predatory pricing but the Court finds this evidence inconclusive. As an aside, it is also noted that both defendant corporations, Quality and Tire Cosmotology, have been dissolved and plaintiff, AAA, continues to exist, displaying a healthy annual rate of growth.

In view of the aforementioned reasons, plaintiff's suit is hereby dismissed. Counsel for defendants will submit a judgment consistent with the above.