**CLIFF FOOD STORES, INC., Appellant,**

v.

**KROGER, INC. and Bilo, Inc., Appellees.**

**No. 26391.**

United States Court of Appeals
Fifth Circuit.

Oct. 1, 1969.

Dennis White, Dallas, Tex., Murray Cohen, James R. Eagleton, Oklahoma City, Okl., for appellant.

Morris I. Jaffe, Wynne, Jaffe & Tinsley, Dallas, Tex., Norman Diamond, Arnold & Porter, Myron P. Curzan, Washington, D. C., for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

THORNBERRY, Circuit Judge:

This is an appeal from the decision of the United States District Court for the Northern District of Texas dismissing appellant's complaint alleging violations of the antitrust laws and claiming trebled damages against the Kroger Company and its wholly-owned, unincorporated sales division, Bilo. Cliff Food Stores, Inc., appellant, is a grocery chain operating three stores in the Dallas area. The Kroger Company, appellee, is the third largest national retail grocery chain, operating more than fifteen hundred supermarkets in twenty-eight states. In the Dallas area it operates a total of forty stores, thirty-six under the Kroger name and four under the Bi-Lo name.

The Bi-Lo stores sold certain products at lower prices than the Kroger stores or the Cliff stores. Appellant attributed a sharp drop in his business to Bi-Lo's low prices, and instituted this suit alleging that:

(1) Kroger and Bi-Lo had conspired and combined to restrain trade in violation of section 1 of the Sherman Act.

(2) Kroger had engaged in unlawful practices in violation of section 2 of the Sherman Act.

(3) Kroger had engaged in unlawful predatory practices in violation of section 2(a) of the Clayton Act as amended by section 13(a) of the Robinson-Patman Act.

(4) Kroger and Bi-Lo comprise an illegal trust under the Texas antitrust laws.[1]

*The Standard of Review.*

▮▮▮ Summary disposition of litigation, especially antitrust cases, is disfavored and amendments should be liberally granted so that all cases may be decided on their merits. Food Basket, Inc. v. Albertson's, Inc., 10th Cir. 1967, 383 F.2d 785. Thus a motion to dismiss on the basis of the pleadings alone should rarely be granted. A court must accept as true all facts that are well pleaded in the complaint, and it must view those facts in the light most favorable to the plaintiff. Lewis v. Brautigam, 5th Cir. 1955, 227 F.2d 124, 55 A.L.R.2d 505. A complaint should not be dismissed unless there is no possibility that the plaintiff can recover under the allegations of his complaint. International Erectors, Inc., v. Wilhoit Steel Erectors & Rental Service, 5th Cir. 1968, 400 F.2d 465. Dismissal of a complaint, however, will be upheld when we are certain that the plaintiff cannot possibly be entitled to relief under any set of facts that could be proved in support of the allegations of the complaint. Id. Mindful of these standards, we proceed to a consideration of the merits of the case.

*Alleged Kroger-Bi-Lo Conspiracy in Violation of Section 1 of the Sherman Act.*

Appellant alleged that Kroger conspired with Bi-Lo in restraint of trade and thereby violated section 1 of the Sherman Act. The district court dismissed this count on the basis that " 'Bi-Lo' is an assumed name under which Kroger retails its products and has no corporate identity of its own. 'Bi-Lo' and Kroger cannot, therefore, conspire with each other." Appellant argues on appeal that although Bi-Lo is an unincorporated division and thus not a legal corporate entity, it nevertheless forms a separate entity capable of conspiring with its parent (Kroger) for the purposes of the antitrust laws.

▮▮▮ It is settled that "common ownership and control does not liberate corporations from the impact of the antitrust laws," Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 1951, 340 U.S. 211, 215, 71 S.Ct. 259, 261, 95 L.Ed. 219, and subsidiary or affiliate corporations are capable of conspiring with their parent corporation for the purposes of section 1 of the Sherman Act. See, e. g., Timken Roller Bearing Co. v. United States, 1951, 341 U.S. 593, 598,

---

1. In its complaint below appellant alleged other violations of the federal antitrust laws but did not press them before this Court.

71 S.Ct. 971, 95 L.Ed. 1199; United States v. Yellow Cab Co., 1947, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010. The courts, however, have been reluctant to expand the intracorporate conspiracy doctrine, and it has been held that a corporation cannot conspire with its officers or agents to violate the antitrust laws, Nelson Radio & Supply Co., Inc. v. Motorola, Inc., 5th Cir.1952, 200 F.2d 911; Chapman v. Rudd Paint & Varnish Co., 9th Cir.1969, 409 F.2d 635, 643 n. 9, and the same rule has been applied to *unincorporated* divisions. *See* Poller v. CBS, Inc., 109 U.S.App.D.C. 170, 1960, 284 F.2d 599, rev'd on other grounds, 1952, 368 U.S. 464, 82 S.Ct. 486, 7 L. Ed.2d 458; Deterjet Corp. v. United Aircraft Corp., D.Del., 1962, 211 F.Supp. 348. The basis of the rule that a corporation cannot conspire with its unincorporated divisions is that there must be at least two persons or entities to constitute a conspiracy, and a corporation cannot conspire with itself any more than a person can. *See* Johnny Maddox Motor Co. v. Ford Motor Co., W.D.Tex., 1960, 202 F.Supp. 103.

■ Appellant has placed strong reliance on Hawaiian Oke & Liquors, Ltd. v. Joseph E. Seagram & Sons, D.Hawaii, 1967, 272 F.Supp. 915, in which the court held that the unincorporated divisions of Joseph E. Seagram & Sons were capable of conspiring with each other in violation of the antitrust laws. This case was a departure from existing authority and has now been reversed by the Court of Appeals for the Ninth Circuit. Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquor Ltd., 9th Cir. 1969, 416 F.2d 71 [dated September 8, 1969]. In refusing to apply the doctrine of intracorporate conspiracy to the case before it, the court stated:

Once the theory that "divisions" or other internal administrative units of a single corporation can "conspire" with each other is accepted, we can see no sensible basis upon which it can be decided that, in one case, there has been a conspiracy and that, in another, there has not. * * * It is most unlikely that partially autonomous * * * divisions of a single corporate enterprise will or can operate completely independently of each other. It is inevitable that there will be communication between them, either directly or through those persons in the corporate hierarchy to whom they report. And [under the trial court's theory] such communication can then be used as evidence that they arrived at understandings with each other as to what they would do. Thus, they are capable of conspiring because they are autonomous and they have conspired because they are, in fact and law, parts of a single corporation.

The reasoning of the Ninth Circuit applies with great force to the case at hand. Bi-Lo is not a corporation, it is not a separate legal entity. Indeed, from what we can tell from the briefs and the record, Bi-Lo is simply an assumed name under which Kroger operates four of its Dallas stores. Since Kroger and Bi-Lo are one, it would be contrary to reason and authority to hold that they were capable of conspiring with each other; in fact, to so hold would be to extend the intracorporate conspiracy doctrine to its ultimate limits. That we are not prepared to do. If there is anything wrongful or illegal in Kroger's operation of grocery stores under an assumed name, relief must be had elsewhere than under section 1 of the Sherman Act. We affirm the district court's dismissal of this count of the complaint.

*Kroger's Alleged Attempt to Monopolize the Retail Grocery Business in Violation of Section 2 of the Sherman Act.*

Appellant's complaint alleges that Kroger was violating section 2 of the Sherman Act by attempting to monopolize the retail grocery business in the Dallas market. The district court dismissed this count on the grounds that appellant's admission in its pleadings that "market conditions in the retail grocery business in the Dallas * * *

area have been extremely competitive" precluded the requisite finding that the defendant was monopolizing or about to monopolize the relevant market, and that the appellant's allegations did not show specific intent on the part of Kroger to monopolize the retail grocery business in Dallas.

In order to maintain a charge of an attempt to monopolize under section 2 of the Sherman Act, it is necessary to show, inter alia, that there is a dangerous probability that the attempt will be successful. Lorain Journal Co. v. United States, 1951, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162. In American Tobacco Co. v. United States, 1946, 328 U.S. 781, 785, 66 S.Ct. 1125, 1127, 90 L.Ed. 1575. The Supreme Court approved the following definition of "attempt to monopolize":

> The phrase "attempt to monopolize" means the employment of methods, means and practices which would, if successful, accomplish monopolization, and which, though falling short, nevertheless approach so close as to create a dangerous probability of it, * * *.

There is nothing whatsoever in appellant's complaint or in the record itself to indicate that Kroger is in dangerous probability of achieving monopoly power[2] in the Dallas market. At the time of this suit, Kroger had forty stores in the Dallas area and planned on expanding to forty-eight stores in the near future. According to appellant's complaint, Dallas is a market that is "saturated with grocery operations" and marked by "extremely competitive" conditions. Appellant also stated that Dallas is a market in which the competitors include

> * * * both A & P and Safeway, the nation's largest and second largest grocery chains, * * * the Southland Corporation, with its 7–11 and Cabell's convenience drive-in markets, and several local chains such as Jiffy Food Stores, Minyard's and Tom Thumb as well as a multitude of single store operations.

In light of these admissions on the part of appellant, it seems obvious that Kroger is not in dangerous probability of achieving monopoly power in the Dallas market. We are of the opinion that ap-

---

2. The essence of monopoly is that "power exists to raise prices or to exclude competition when it is desired to do so." American Tobacco Co. v. United States, 1946, 328 U.S. 781, 811, 66 S.Ct. 1125, 1140, 90 L.Ed. 1575. It appears that something more than 50% of the market is a prerequisite to a finding of monopoly. See, e. g., Standard Oil Co. v. United States, 1911, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (90%); United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (70%); and United States v. Grinnell Corp., 1966, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (87%). Former Assistant Attorney General Turner, head of the Antitrust Division, testified before a Congressional committee that:

> Section 2 refers to monopolies but not to oligopolies, and it has never been found to cover a monopoly in an industry in which the leading firm accounts for less than 70 per cent of the market.

Hearings, Select Committee on Small Business, United States Senate, Status and Future of Small Business, 90th Cong., 1st Sess. 714 (1967).

Appellant contests this, relying on the following language from Brown Shoe Co. v. United States, 1962, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510:

> Even if a combination controls only a small share of a particular market, it can adversely affect competition in a fragmented industry if the share is held by a large national chain.

That case is not in point, however, since it was a suit under section 7 of the Clayton Act. That section is aimed at mergers and is intended to reach incipient monopolies and trade restraints *outside the scope of the Sherman Act. Id.* at 370 U.S. 317, 82 S.Ct. 1502.

We are careful to note, however, that the Sherman Act "directs itself against the *dangerous probability* as well as against the completed result," Swift & Co. v. United States, 1905, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518 (emphasis added), and therefore one must be particularly wary of the numbers game of market percentage when considering an "attempt to monopolize" suit.

pellant cannot possibly be entitled to relief under any set of facts that could be proved in support of its allegations concerning section 2 of the Sherman Act. *Cf.* Becker v. Safelite Glass Corp., D.Kan. 1965, 244 F.Supp. 625. Therefore, we affirm the district court's dismissal of this count of the complaint.

*Allegations that Kroger Engaged in Price Discrimination in Violation of Section 2(a) of the Clayton Act as amended by Section 13(a) of the Robinson-Patman Act.*

Appellant alleged that Kroger was engaged in commerce and had been engaging "in price cutting, price manipulation, price averaging and the package differential and thus attaining price erosion in the market place." Appellant further alleged that Kroger was "discriminating in price between different purchasers of commodities of like quality, which commodities are sold for use and consumption within the United States, to the effect that such discrimination may be substantially to lessen competition or tend to create a monopoly or to injure, destroy or prevent competition," and charged that the alleged discrimination was in violation of section 2(a) of the Clayton Act as amended by section 13(a) of the Robinson-Patman Act. The basis of appellant's complaint on this matter apparently was that the Bi-Lo stores sold the same or like products at prices lower than the Dallas Kroger stores and the out-of-state Kroger stores.[3] The district court dismissed this count of the complaint on the ground that section 13(a) "was not intended to regulate retail sales to consumers."

To maintain an action under section 13(a) the plaintiff must allege and prove, inter alia: (1) That the defendant is engaged in commerce; (2) that, in the course of such commerce, the defendant has discriminated in price between different purchasers of commodities of like grade and quality; (3) that *"either or any of the purchases involved in such discrimination are in commerce";* and (4) that there is likely to be a severe, adverse effect on competition. (Emphasis added.) 15 U.S.C. § 13(a). The language of the Act—requiring discriminatory sales to be "in commerce"—is far narrower in scope than the "effect on commerce" test applicable under the Sherman Antitrust Act. *See, e. g.,* Foremost Dairies, Inc. v. FTC, 5th Cir.1965, 348 F.2d 674; Jones v. Metzger Dairies, Inc., 5th Cir. 1964, 334 F.2d 919. In appropriate cases, the Sherman Act may be applied to intrastate activities, including retail sales, if they *affect* interstate commerce. *See, e. g.,* United States v. Greater Kansas City Retail Coal Merchants' Ass'n, W.D.Mo.1949, 85 F.Supp. 503. Under the terms of section 13(a), however, at least one of the sales alleged to be discriminatory must actually be *in* interstate commerce. Walker Oil Co. v. Hudson Oil Co., 5th Cir.1969, 414 F.2d 588 [Dated July 8, 1969]. In Hiram Walker, Inc. v. A & S Tropical, Inc., 5th Cir. 1969, 407 F.2d 4 [Dated January 31, 1969], this Court stated:

[I]n order to come within the provisions of the Robinson-Patman Act, the [plaintiff] must demonstrate that the discriminatory sales were "in commerce." * * * Thus, the Robinson-Patman Act is applicable only

3. On appeal, appellant argues that appellee Kroger violated the Robinson-Patman Act because in its capacity as an integrated wholesaler-retailer, Kroger sold products at lower prices to Bi-Lo than to its other stores in Dallas. After a search of the record and a liberal reading of the complaint, we must conclude that appellant did not present this charge to the trial court. It is a settled rule that a litigant cannot raise in a court on appeal a point not raised in the lower court. Poston v. Caraker, 5th Cir. 1967, 378 F.2d 439; Humble Oil & Refining Co. v. Martin, 5th Cir. 1961, 298 F.2d 163. Therefore, appellant's charges against Kroger as an integrated wholesaler-retailer are not properly before this Court.

where the allegedly discriminatory transactions took place in interstate commerce. That is, "* * * at least one of the two transactions which, when compared, generate a discrimination must cross a state line."

*See also* Borden Company v. FTC, 7th Cir.1964, 339 F.2d 953; Willard Dairy Corp. v. National Dairy Products Corp., 6th Cir.1962, 309 F.2d 943.

In Walker Oil Co. v. Hudson Oil Co., *supra,* Hudson was an interstate corporation operating forty-eight retail gasoline stations in twenty states. Its Mobile, Alabama service station sold gasoline at a different price than its Pensacola, Florida station. Hudson bought its gasoline from Murphy Oil Company. The gasoline that Murphy sold to Hudson came from outside Alabama to Murphy's terminal in Mobile where it was purchased by Hudson at wholesale prices from Murphy and then transported to Hudson's Mobile and Pensacola stations by independent carrier. The discrimination alleged to be violative of the Robinson-Patman Act was the discrimination between the retail prices charged at Hudson's Mobile and Pensacola stations. This Court held that the Robinson-Patman Act was not applicable to this situation and stated:

> [T]he sales by the two retail gasoline stations are local, intrastate retail sales. They are * * * made to whatever random purchasers may wander in desiring to purchase gasoline at the set price. The sales are completed entirely upon the premises of the respective stations. The sales themselves do not cross a state line and hence are not "in commerce" within the meaning of the Robinson-Patman Act.

The Tenth Circuit has decided a case very similar to the one at hand. In Food Basket, Inc. v. Albertson's Inc., 10th Cir.1967, 383 F.2d 785, the plaintiff alleged that defendant, an interstate supermarket chain, offered for sale at one store selected food products at prices lower than it charged for like foods at its other stores, and that it succeeded in selling items at the said store at unprofitable levels because it subsidized its losses through the use of "its interstate treasury." The Court affirmed the summary judgment for the defendant since none of the sales complained of were in interstate commerce. At least one of the discriminatory sales must cross a state boundary.

Appellant is unmoved by this line of authority and argues that the controlling case is Moore v. Mead's Fine Bread Co., 1954, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145. Appellant argues that Kroger should be held liable under section 13(a) because Bi-Lo's price-cutting was financed by the profits from Kroger's multi-state grocery activities. There is language in the *Mead's Fine Bread* case that may be read as supporting appellant's argument. Mr. Justice Douglas was concerned about large interstate enterprises waging local price wars with war chests filled with interstate booty. In *Mead's,* however, one of the discriminatory sales, the profits from which subsidized the local price-cutting campaign, was "in commerce" within the meaning of the Act. The defendant was engaged in the baking business at Clovis, New Mexico and sold bread to retailers in Santa Rosa, New Mexico and in Farwell, Texas, a town which it served by deliveries from Clovis. Mead's cut its prices of bread in Farwell. Thus it is evident that the requisite elements to establish a violation were present. The New Mexico sales were at prices lower than the Texas sales; the Texas sales were across state lines, thereby satisfying the requirement that at least one of the sales be "in commerce." And since *Mead's Fine Bread,* the critical language in the statute has been repeatedly construed to mean that the seller must not only be engaged in interstate commerce, but that one of the discriminatory sales must be in interstate commerce. *See, e. g.,* Central Ice Cream Co. v. Golden Rod Ice Cream Co., 7th Cir.1961, 287 F.2d 265; Willard Dairy Corp. v. National Dairy Products Corp., 6th Cir.1962, 309

F.2d 943; Borden Company v. FTC, 7th Cir.1964, 339 F.2d 953.

■■■ The sales complained of in the instant case were intrastate in nature. When food products are delivered to the retail grocer, title thereto passes to him. Even though many of the products are derived from out of state, the merchant's sales to the general public are not in the flow of commerce because the moment the products reach his shelves "they come to rest and cease to be 'in the flow' of interstate commerce." Smith Metropolitan Market Co. v. Food and Grocery Bureau of Southern California, S.D.Cal.1939, 33 F.Supp. 539, 540. See A.L.A. Schechter Poultry Corp. v. United States, 1935, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. Retail sales of goods shipped into a state may be considered to remain within the flow of commerce under three circumstances: (1) Where they are purchased by the retailer upon the order of a customer with the definite intention that the goods are to go at once to the customer; (2) where the goods are purchased by the retailer from the supplier to meet the needs of specified customers pursuant to some understanding with the customer, although not for immediate delivery; and (3) where the goods are purchased by the retailer based on the anticipated needs of specific customers. See Walker Oil Co. v. Hudson Oil Co., supra. None of these circumstances is present here. The retail sales of groceries to the general public are transactions consummated locally,[4] involving commodities that have been previously diverted from the stream of commerce and brought to rest within the state. Cf. Spencer v. Sun Oil Co., D.Conn.1950, 94 F.Supp. 408. Therefore, retail sales of groceries to the random public are not within the purview of section 13(a) of the Robinson-Patman Act.[5]

It is obvious from the foregoing that appellant's case is grounded on a mistaken view of section 13(a) and we therefore affirm the district court's dismissal of this count of the complaint.

*Allegation that Kroger and Bi-Lo Comprise an Illegal Trust in Violation of the Texas Antitrust Laws.*

■■■ Appellant alleged that Kroger and Bi-Lo comprised an illegal trust under the Texas antitrust laws. The district judge dismissed this count of the complaint on the basis that "Kroger and Bilo are one legal entity incapable of combining into an illegal trust."

Under section 15.02 of subchapter A of the 1967 Texas Business and Commerce Code, a "trust" is defined as a "combination * * * or acts by two or more persons." Such persons must be "independent" of one another and not in the "relationship of principal and agent." See Padgitt v. Lone Star Gas Co., 213 S.W.2d 133, 136 (Tex.Civ.App. 1948). Kroger and Bi-Lo were not separate entities and the Texas antitrust claim fails for lack of any allegation indicating the requisite "combination * * * or acts by two or more persons." The district court's dismissal of this count of the complaint is affirmed.

Affirmed.

---

4. An obvious exception is retail sales crossing state lines. For example, a grocery store in Texarkana, Texas that makes deliveries in Texarkana, Arkansas would be engaged in interstate commerce, and those interstate sales would seemingly meet the "in commerce" requirement of section 13(a).

5. Appellee urges us to hold that retail sales *as such* are outside the scope of section 13(a). In support of this proposition, they cite the Congressional testimony of Mr. H. B. Teegarden, the actual author of the Robinson-Patman Act. Mr. Teegarden's testimony that retail sales were not covered by section 13(a), however, was based on the assumption that retail sales are intrastate in nature and thus would not meet the commerce requirements of the Act. We can conceive of circumstances where retail sales could meet the "'in commerce" requirements of section 13(a), see text, *supra*, page 208 and note 4, page 210, and therefore do not now make a blanket holding that all retail sales are outside the scope of section 13(a).