**John EVANS, Trustee in Bankruptcy for Hempfield Stores, Inc., a Bankrupt, Plaintiff,**

**v.**

**S. S. KRESGE COMPANY, a foreign corporation, Defendant.**

**Civ. A. No. 71–85.**

United States District Court,
W. D. Pennsylvania.

March 14, 1972.

Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiff.

Andrew L. Weil, Egler, McGregor & Reinstadtler, Henry T. Reath, Philadelphia, Pa., for defendant.

## OPINION and ORDER

McCUNE, District Judge.

Plaintiff, a trustee in bankruptcy, has instituted a treble damage action claiming alleged violation of the anti-trust laws.

We are confronted by two motions filed by defendant. The first is a motion for summary judgment addressed solely to the question of jurisdiction, i. e., whether or not interstate commerce has been affected in sufficient measure that an action will lie here under the anti-trust laws. The other is a motion to strike a reply by plaintiff to defendant's counterclaim. This reply is called the plaintiff's counterclaim.

## THE MOTION FOR SUMMARY JUDGMENT

Defendant operates a great many department stores, some under the name S. S. Kresge and some under the registered trade mark, "K-Mart." It refrains from selling food, but recognizes that the sale of food attracts people to the locations where its other merchandise is available so it licenses the name "K-Mart" to the operators of independent food stores which are usually located next door to or nearby a K-Mart department store.

The plaintiff's bankrupt had entered into two such license agreements with defendant for the operation of food stores, one in Westmoreland County and one in Allegheny County but both near Pittsburgh within shopping centers. The bankrupt operated the stores from 1964 to 1969 when it ceased business.

The total retail volume of the two stores was about four million dollars per year, almost all of which came from the sale of groceries although the stores sold the usual non-food items (health and beauty aids, etc.) now customarily found in a food store. None of the merchandise which the licensee sold was obtained from the defendant but on the contrary from independent sources. It was all sold in the communities where the stores were situated.

Believing the operation of a food store to be a purely intrastate activity defendant filed its motion and submitted an affidavit of the director of K-Mart Supermarkets to show that the operation of this food business was entirely local in character. A counter affidavit has been presented by the owner of the bankrupt to show that the business affects interstate commerce. It is argued by defendant that the facts are sufficiently clear and undisputed that we can decide at this stage of the proceeding that the operation in question so inconsequentially affected interstate commerce as to preclude jurisdiction here even assuming there was some violation of the anti-trust laws. Plaintiff of course, argues the opposite.

While defendant has shown that the major supplier of groceries was a Pennsylvania wholesaler, Fox Grocery Company, located nearby within Pennsylvania, the plaintiff has alleged that it received a substantial quantity of goods by direct shipment from out-of-state suppliers which amounted on a yearly basis to $400,000.00 at cost. Plaintiff contends that these goods were manufactured outside Pennsylvania and shipped to plaintiff for immediate resale.

Plaintiff contends that defendant regulated by the provisions of the license agreements various aspects of plaintiff's business including the prices which the bankrupt could charge for the non-food items it carried which invariably were sold in the adjoining K-Mart stores as well, and the prices which the bankrupt could charge for food. It is alleged that food prices were fixed so that they could be no higher than those charged by other food stores to insure that the K-Mart image of a low price merchandiser would be preserved.

For the purpose of deciding this motion it is unnecessary to decide whether there were violations of the anti-trust laws or any damages resulting from

such violations. It is only necessary to decide whether there is any jurisdiction here to determine these questions.

The Supreme Court has defined interstate commerce for Sherman Act and Clayton Act purposes in the broadest terms. In Fortner Enterprises v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1968) dealing with a tying arrangement the Court stated:

" . . normally the controlling consideration is simply whether a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimis* is foreclosed to competitors by the tie, for as we said in *International Salt*, [International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20] it is 'unreasonable *per se* to foreclose competitors from any substantial market' by a tying arrangement, 332 U.S. at 396, 68 S.Ct. at 15." Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495 at 501, 89 S.Ct. at 1258.

The Court held there that purchases of $190,000.00 in prefabricated homes per year from interstate commerce was sufficient to meet the requirement of a not insubstantial amount.

The bankrupt contends that its purchases directly from interstate commerce each year were substantial within the meaning of *Fortner*.

The defendant however cites and places reliance on Cliff Food Stores, Inc. v. Kroger Inc., 417 F.2d 203 (5th Cir. 1969) decided subsequent to *Fortner*. The relevant portion of that decision dealt with the Robinson-Patman Amendment to section 2(a) of the Clayton Act, 15 U.S.C.A. § 13(a). The Court held 15 U.S.C.A. § 13(a) inapplicable to a local retail grocery operation but expressly recognized that "the language of the Act [15 U.S.C.A. § 13(a)] requiring discriminatory sales to be 'in commerce' as a prerequisite to jurisdiction is far narrower in scope than the 'affect on commerce test' applicable under the Sherman Anti-trust Act." The Court in *Cliff Food* stated that in appropriate cases the Sherman Act might be applied to intrastate activities, including retail sales, if they affected interstate commerce while under the terms of section 13(a) at least one of the sales alleged to have been discriminatory must actually have been *in* interstate commerce. It is apparent that *Cliff Foods* is distinguishable from the instant case.

While there are many cases where the courts have held that local restraints on interstate commerce must be direct and substantial and not merely inconsequential, remote or fortuitous, see Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (2d Cir. 1964), and Savon Gas Stations No. Six, Inc. v. Shell Oil Co., 309 F.2d 306 (4th Cir. 1962), cited by defendant, the affidavit filed on behalf of plaintiff would bring the instant case within the holding in *Fortner*.

The theory of plaintiff appears to be that the alleged price fixing caused the bankrupt to be unable to continue in business and unable to continue buying goods and thus about $400,000.00 per year of merchandise ceased flowing from interstate commerce into its stores. The plaintiff argues that consequently there was an affect on interstate commerce which *Fortner* has already held to be substantial enough to give us jurisdiction.

Since the facts are in dispute we cannot grant summary judgment.

### THE MOTION TO STRIKE PLAINTIFF'S COUNTERCLAIM

This issue arose from the lease that existed between defendant and plaintiff's bankrupt. In its answer to plaintiff's complaint defendant asserted a counterclaim for rentals due under the lease. Plaintiff counterclaimed for rentals already paid which plaintiff alleged to be a preference under Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96. Defendant contends that plaintiff's

counterclaim should be dismissed for lack of jurisdiction.

This position is premised on the conclusion that because plaintiff's counterclaim did not arise out of the same transactions that gave rise to the *original complaint,* such counterclaim is only permissive. In as much as we disagree with this conclusion we need not go further into defendant's argument. The pertinent provisions of Rule 13 of the Federal Rules of Civil Procedure read:

"(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. of Civ.P., Rule 13.

We believe that the proper construction of Rule 13 is set forth in 3 Moore, Federal Practice, ¶13.08 (2d ed. 1966). The concern is with the general term "pleading" and whether or not the counterclaim "arises out of the transaction. . . . that is the *subject matter of the opposing party's claim.* . ." Rule 13, *supra.* In the instant case defendant's counterclaim is the "opposing party's claim" which defines the boundaries of a compulsory counterclaim. Since both counterclaims arise from the same subject matter, i. e., the lease, we conclude that plaintiff's counterclaim is compulsory. That being the case, there is no need for an independent basis for jurisdiction.

Defendant contends that to allow a counterclaim to be set forth in a reply violates Rule 7 of the Federal Rules of Civil Procedure. However, no authority is cited in support of this position. We conclude that the better rule at least with regard to compulsory counterclaims is to allow the pleading. See 3 Moore, Federal Practice, ¶13.08.