**UNITED STATES of America**

**v.**

**COTTON BAKING CO., INC.**

**UNITED STATES of America**

**v.**

**COTTON'S, INC.**

**UNITED STATES of America**

**v.**

**COTTON'S OUACHITA BAKERY, INC.**

**Crim. Nos. 75–42–B to 75–44–B.**

United States District Court,
M. D. Louisiana.

April 15, 1981.

**224**

Justin M. Nicholson, John T. Orr, Jr., Anti-Trust Div., U. S. Dept. of Justice, Atlanta, Ga., for plaintiff.

Michael S. Fawer, E. Sue Bernie, Fawer & Greenbaum, New Orleans, La., for defendants.

POLOZOLA, District Judge:

This matter is before the Court on the motions of Cotton Baking Co., Inc., Cotton's, Inc. and Cotton's Ouachita Bakery, Inc. (Petitioners) for a Writ of Error Coram Nobis. Each of the petitioners seeks to set aside a plea of nolo contendere on the ground that the prosecution of the bill of information filed against them was in violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. Pursuant to the Court's order, the Government has filed a response to petitioners' motions.

On May 2, 1975, each of the petitioners was named in a separate bill of information which charged them with violation of 15 U.S.C. § 1. Named in a separate bill of information was Cotton Bros. Baking Co., Inc., which was also charged with violating 15 U.S.C. § 1. Numerous other parties— both individuals and baking companies— were also named in the four bills of information filed by the Government. These four bills of information were docketed on the Court's docket as Criminal Actions 75–42, 75–43, 75–44, and 75–45.

In Criminal Action 75–42, Cotton Baking Co., Inc. was named as a defendant and was charged with engaging in a conspiracy to violate 15 U.S.C. § 1 with the other named defendants in the Shreveport-Texarkana market. Cotton's, Inc. was named as one of the defendants in Criminal Action 75–43 and was charged with conspiracy to violate 15 U.S.C. § 1 in the Baton Rouge market. Named as one of the defendants in Criminal Action 75–44 was Cotton's Ouachita Bakery, Inc., which was also charged with a similar violation of the Monroe market. Cotton Bros. Baking Co., Inc. was named as one of the defendants in Criminal Action 75–45 and charged with a violation of 15 U.S.C. § 1 in the Lafayette-Lake Charles-Alexandria market. Thus, each of the Cotton companies was charged in a separate bill of information with other defendants and none of the Cotton companies was named in the same bill of information with another Cotton company.

On July 31, 1975, each of the Cotton companies entered pleas of nolo contendere which were accepted by the Court. Thereafter, each of the Cotton defendants was ordered to pay a fine of $25,000. It is these convictions and sentences which the petitioners seek to set aside.

■ The first issue the Court must determine is whether petitioners are precluded from raising the defense of double jeopardy after pleading nolo contendere. The Court finds that under the facts presented in this case, the petitioners did not waive their claim of double jeopardy and therefore, are entitled to raise a claim of double jeopardy herein. *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed. 195 (1975).

■ Having found that petitioners may assert a claim of double jeopardy, the Court must now determine whether the prosecutions filed against petitioners in Criminal Actions 75–42, 75–43, and 75–44 were in violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. Petitioners contend that since each of the petitioners is a subsidiary of Cotton Bros. Baking Co., Inc., there could only be one conviction in this case. Since the parent company, Cotton Bros. Baking Co., Inc., also entered a plea of nolo contendere herein, petitioners argue that their pleas should be set aside under the Double Jeopardy Clause. In other words, petitioners contend that the four Cotton companies form one single trader and, therefore, there can only be one conviction. The evidence and the jurisprudence fail to support petitioners' arguments. For reasons which follow, the Court finds that the prosecutions did not violate the Double Jeopardy Clause, and thus, petitioners' Writ of Error Coram Nobis must be denied.

Each of the Cotton companies is separately incorporated and is separately located. Each company has a separate corporate name. Cotton Bros. Baking Co., Inc., as the parent corporation of each of the other Cotton companies, owns 80% of the stock in each of the subsidiaries. According to the evidence in the record, each of the four companies have separate production facilities and each company services a different market. It is clear that each company holds itself out to be a separate corporation, legally and otherwise. The four Cotton companies are organized and operated independently of one another and do not in any way constitute a single business unit.

15 U.S.C. § 1 provides that every "person who shall make any contract or engage in any combination or conspiracy declared by sections 1–7 of this title to be illegal shall be deemed" guilty of the offense. The Congress has defined person "to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country." 15 U.S.C. § 7.

It is well settled that common ownership or control by a parent corporation of its subsidiaries does not insulate the parent company or the subsidiaries from the requirements of the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq. The United States Supreme Court in a series of cases beginning with *United States v. Yellow Cab Company*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947) has carefully and succinctly set forth the standard to be applied by the courts in determining whether a parent company and its subsidiaries are in violation of the Sherman Anti-Trust Act. Thus, in *United States v. Yellow Cab Company*, supra, the Court stated:

"Similarly, any affiliation or integration flowing from an illegal conspiracy cannot insulate the conspirators from the sanctions which Congress has imposed. The corporate interrelationships of the conspirators, in other words, are not determinative of the applicability of the Sherman Act. That statute is aimed at substance rather than form. * * *

And so in this case, the common ownership and control of the various corporate appellees are impotent to liberate the alleged combination and conspiracy from the impact of the Act." 67 S.Ct. at 1565.

Later, in *Schine Chain Theatres v. United States*, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245 (1948) the Court noted that "the concerted action of the parent company, its subsidiaries, and the named officers and directors in that endeavor was a conspiracy which was not immunized by reason of the fact that the numbers were closely affiliated rather than independent." 68 S.Ct. at 951. The United States Supreme Court continued to apply the same rule in *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951), stating:

"Respondents next suggest that their status as 'mere instrumentalities of a single manufacturing-merchandising unit' makes it impossible for them to have conspired in a manner forbidden by the Sherman Act. But this suggestion runs counter to our past decisions that common ownership and control does not liberate corporations from the impact of the anti-trust laws." 71 S.Ct. at 261.

During the same term, the Court decided *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951) and concluded:

"The fact that there is common ownership or control of contracting corporations does not liberate them from the fact of the antitrust laws. * * * Nor do we find any support in reason or authority for the proposition that agreements between legally separate persons and companies to suppress competition among themselves and others can be justified by labeling the project a 'joint venture'. Perhaps every agreement and combination to restrain trade could be so labeled." 71 S.Ct. at 925.

Finally, in *United States v. Citizens & Southern National Bank*, 422 U.S. 86, 95 S.Ct. 2099, 45 L.Ed.2d 41 (1975), the United States Supreme Court reaffirmed its prior jurisprudence on this issue, concluding:

"The central message of the Sherman Act is that a business entity must find new customers and higher profits through internal expansion—that is, by competing successfully rather than by arranging treaties with its competitors. This Court has held that even commonly owned firms must compete against each other, if they hold themselves out as distinct entities. 'The corporate interrelationships of the conspirators . . . are not determinative of the applicability of the Sherman Act.' * * * A fortiori, independently owned firms cannot escape competing merely by pretending to common ownership or control, for the pretense would simply perfect the cartel. We may also assume, though the question is a new one, that a business entity generally cannot justify restraining trade between itself and an independently owned entity merely on the ground that it helped launch that entity, by providing expert advice or seed capital. Otherwise, the technique of sponsorship followed by restraint might displace internal growth as a normal and legitimate technique of business expansion, with unknowable consequences." 95 S.Ct. at 2116–2117.

See, also: *Perma Life Mufflers, Inc. v. Intern'l Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). Most, if not all of the Circuit Courts have also rendered decisions which provide that common control or ownership of a company does not insulate the companies from the Sherman Anti-Trust Act. In the only criminal case which the Court could find which discusses this issue, the Seventh Circuit Court of Appeals in *United States v. General Motors Corporation*, 121 F.2d 376 (7 Cir. 1941) carefully and correctly set forth the jurisprudence as follows:

"1. Single Trader. Counsel contend that the appellants are affiliated and non-competing units engaged in a single enterprise and hence they are in effect a single trader; that as a single trader they have the right to condition the sale of their product and to restrain their own product by selling it to whom they please; and that a combination of competing units is essential to conspiracy under the Sherman Act. * * *

This reasoning fails mainly because it assumes that the General Motors dealer is an agent of the manufacturer or, stated differently, because it considers the commerce from factory to retail public as the appellants' commerce rather than as the dealers' commerce. Clearly a vertical combination or combination of non-competitors may conspire to restrain unreasonably the interstate trade and commerce of third parties and thereby subject themselves to the prohibitions of the Sherman Act. * * *

*Nor can the appellants enjoy the benefits of separate corporate identity and escape the consequences of an illegal combination and restraint of trade by insisting that they are in effect a single trader.* The test of illegality under the Sherman Act is not so much the particular form of business organization effected, as it is the presence or absence of restraint of trade and commerce. But even if the single trader doctrine were applicable, it would not help the appellants. * * *" 121 F.2d at 404 (Emphasis supplied)

The Fifth Circuit Court of Appeals has applied a similar rule. Thus, in *Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203 (5 Cir. 1969), the Court held that it is "settled that 'common ownership and control does not liberate corporations from the impact of the antitrust laws,' * * *, and subsidiary or affiliate corporations are capable of conspiring with their parent corporation for the purposes of Section 1 of the Sherman Act." 417 F.2d at 205. See also: *Syracuse Broadcasting Corporation v. Newhouse*, 319 F.2d 683 (2 Cir. 1963); *DuPont Glore Forgan, Inc. v. American Tel. and Tel. Company*, 437 F.Supp. 1104, Aff. *American Tel. and Tel. Company v. United States*, 578 F.2d 1366 and 578 F.2d 1367, cert. denied, 439 U.S. 970, 99 S.Ct. 465, 58 L.Ed.2d 431; *Coleman Motor Company v. Chrysler Corporation*, 525 F.2d 1338 (3 Cir. 1975); *Schaben v. Samuel Moore and Company*, 462 F.Supp. 1321, Aff. 606 F.2d 831 (8 Cir. 1979); *Minnesota Bearing Company v. White Motor*

*Corporation,* 470 F.2d 1323 (8 Cir. 1973); *Joseph E. Seagram & Sons, Inc. v. Hawaiian OKE and Liquors, Ltd.,* 416 F.2d 71 (9 Cir. 1969); *Mutual Fund Investors, Inc. v. Putnam Management Company, Inc.,* 553 F.2d 620 (9 Cir. 1977) and *Las Vegas Sun, Inc. v. Summa Corporation,* 610 F.2d 614 (9 Cir. 1979).

The mere fact that the petitioners allege that they do not compete with one another is immaterial under the facts of this case. *Battle v. Liberty National Life Insurance Company,* 493 F.2d 39 (5 Cir. 1974). In the *Battle* case, the Fifth Circuit Court of Appeals concluded:

> "Even though Liberty National and Brown-Service are not competitors, because Liberty National is in the insurance business while Brown-Service provides funeral services and merchandise, the alleged facts tend to establish that they are operationally two separate organizations entirely capable of combining or conspiring to restrain trade. That the defendants do not compete with each other in no way precludes them from combining or conspiring to suppress competition, the ultimate result of which would inure to their mutual benefit. While the existence of competition between two organizations would tend to establish their separateness and thus fulfill the requirement that it takes more than one party to create a combination or conspiracy, the absence of such competition does not preclude the existence of two separate organizations." 493 F.2d at 44.

The Court has concluded that the Cotton companies are separate organizations. The petitioners cannot enjoy the benefits of separate identity and thereafter, escape the consequences of the provisions of the Sherman Anti-Trust Act by insisting that they are actually one company. Having found that each of the Cotton companies is a separate organization and therefore, a separate person within the meaning of 15 U.S.C. § 1, the Court concludes that each of the Cotton companies was capable of and did in fact engage in a conspiracy with other persons in violation of the Sherman Anti-Trust Act. Whether the Court finds there was one conspiracy or several conspiracies is immaterial in this case. Each of the Cotton companies was separately and independently engaged in a conspiracy with another person and company. Each of the Cotton companies therefore is responsible for its own acts. It is important to note that petitioners do not deny the existence of a conspiracy. They only contend that all four companies should not be held responsible for the conspiracy. This contention is without merit. Since each of the Cotton companies is a separate organization and each was involved in the conspiracy charged by the Government, the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States was not violated in this case. Thus, each petitioner's Writ of Error Coram Nobis must be and is hereby DENIED.

Judgment shall be entered accordingly.