**EXXON CORPORATION,**
**Plaintiff-Appellee,**

v.

**BERWICK BAY REAL ESTATE PART-NERS, Defendant-Appellant.**

**No. 84–3732.**

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1984.

McGlinchey, Stafford, Mintz, Celline & Lang, P.C., J. Forrest Hinton, Graham Stafford, New Orleans, La., for defendant-appellant.

William B. Matthews, Jr., William R. Hurt, Trial Attys., Paul J. Heim, New Orleans, La., for plaintiff-appellee.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

PER CURIAM:

## I.

We have before us a request by the appellant, Berwick Bay, pursuant to Fed.R. App.P. 8 to stay the operation of a preliminary injunction issued by the district court. We conclude that Berwick Bay has failed to demonstrate a likelihood of success in the appeal, and we therefore deny the motion to stay.

This suit was initiated by Exxon Corp., as successor to Humble Oil Co. and H.S.L. Corp., a Humble subsidiary, to compel compliance with restrictive covenants granted to Humble and H.S.L. in connection with the development of a 4,000-acre subdivision in New Orleans, Louisiana. In 1965, the developer, LaKratt Corp., entered into agreements to convey nine gasoline service station sites to Humble and two service station sites to H.S.L. As a part of the agreements, Humble and H.S.L. negotiated for restrictive covenants which prevented LaKratt from conveying or anyone else from developing any service station within two blocks of a Humble or an H.S.L. service station. These restrictive covenants were noted on a comprehensive land use plan. The placement of the eleven service stations effectively prevented any other entity from constructing any service station in the development.

Under the original agreements, the restrictive covenants benefiting each of the eleven parcels of land were to expire on December 31, 1982. But in 1969, the restrictive covenants which affected seven of the nine Humble service stations were extended until December 31, 1985. The record as forwarded to us does not disclose conclusively whether the restrictive covenants affecting the H.S.L. service station sites were also extended until December 31, 1985. Berwick Bay claims that they were not, while Exxon claims that they were.

In August 1984, Berwick Bay purchased property in the subdivision and began constructing a low-cost, self-service gas station/convenience store/car wash. Berwick Bay's property was within two blocks of an Exxon service station which apparently was located on one of the two original H.S.L. service station sites. Exxon instituted this suit to enjoin the construction and/or operation of Berwick Bay's service station until the restrictive covenant expires in December 1985. The district court conducted a two-day hearing on Exxon's motion for a preliminary injunction and heard the testimony of eight witnesses. At the conclusion of the hearing, the parties

waived the filing of post-hearing briefs and the court issued a preliminary injunction. The injunction restrained Berwick Bay and its agents from completing construction of its gasoline service station and from selling any motor fuels until December 31, 1985.

## II.

We review the issuance of the preliminary injunction under an abuse of discretion standard. *Myers v. Moody*, 723 F.2d 388, 389 (5th Cir.1984). The issuance of such an injunction requires that four requirements be met. *See City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir.1983). The issue before us at this time, however, a step earlier than the review of the injunction on the merits, is somewhat different. Berwick Bay asks this court to stay the operation of the preliminary injunction pending appeal. To justify a stay, Berwick Bay must show that (1) it is likely to succeed on the merits of its appeal, (2) it will be irreparably injured if the injunction is not stayed, (3) the stay would not substantially harm Exxon, and (4) granting the stay would serve the public interest. *Florida Businessmen for Free Enterprise v. City of Hollywood*, 648 F.2d 956, 957 (1981).

Berwick Bay's major arguments focus on the first of these requirements. It undertakes to show that the district court erred in concluding that Exxon was likely to prevail on the merits.

## A LIKELIHOOD OF PREVAILING ON APPEAL

Berwick Bay first argues that at the TRO and the preliminary injunction hearings, the district court shifted the burden to it to demonstrate why an injunction should not issue. Berwick Bay quotes from the transcripts of both hearings in an attempt to show that the court was predisposed to grant the preliminary injunction and did not require Exxon to satisfy the four requirements for an injunction to issue. We have carefully read the entire record. Selected portions of the transcripts of the hearings might be taken to suggest that the court shifted the burden to Berwick Bay to show why an injunction should not issue. An examination of the entire record, however, reveals clearly that no such shifting of the burden occurred. Essentially, the court told Berwick Bay on several occasions that (1) Exxon had established a prima facie case warranting an injunction by showing that the restriction in question was in the public record; (2) this was an appropriate case for an injunction; and (3) Berwick Bay had a "rough row to hoe" to demonstrate why an injunction was unwarranted given those facts. These were acceptable statements in view of the evidence before the court.

Berwick Bay also argues that the district court's grant of the motion for a preliminary injunction is inconsistent with the court's findings of fact on Berwick Bay's antitrust defense. The district court found that "Exxon, clearly by physical presence and sales, does indeed—to use the expert's word—dominate that particular market area." The district court also found that Exxon's "domination" was caused by the "[dis]proportionate number of [Exxon] outlets and their strategic location." Berwick Bay argues that these findings by the district court indicate that Berwick Bay had a valid antitrust defense.

The testimony in the record shows, however, that the various experts who used the term "dominate" were using that term in its commonly understood sense rather than in its legal sense. For example, Berwick Bay's expert conceded that when he used the term "dominate" he did not equate it with the term "monopolize." Contrary to Berwick Bay's arguments, the district court's findings of fact did not indicate that Berwick Bay was likely to prevail on its antitrust defense.

Another critical fact militates against Berwick Bay's claim that its antitrust defense established Exxon's lack of likelihood of success on the merits. Using even the liberal market share calculations offered by Berwick Bay's expert, which estimated Exxon's share of the market at 52%, there is an insufficient basis as a matter of law

to conclude that Exxon violated the antitrust laws. This Court has noted that monopolization is rarely found when the defendant's share of the relevant market is below 70%. *Dimmit Agri Industries, Inc. v. CPC International, Inc.,* 679 F.2d 516, 529 nn. 11 & 12 (5th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983); *Clifford Food Stores, Inc. v. Kroger, Inc.,* 417 F.2d 203, 207 n. 2 (5th Cir.1969). Therefore, despite Berwick Bay's claimed antitrust defense, the district court was justified in concluding that "there is no basis for the upsetting of the [land use] restriction."

In its remaining challenge, Berwick Bay claims that the restrictive covenants benefiting the Exxon station which is within two blocks of its land expired on December 31, 1982, rather than on December 31, 1985. Berwick Bay concedes that the restrictive covenants for property adjacent to seven of the nine Humble stations were amended in 1969 to extend those covenants from December 1982, to December 1985. Berwick Bay claims, however, that this Exxon station is on a site which originally was conveyed to H.S.L. and that no agreement was consummated with H.S.L. which extended until December 31, 1985, LaKratt's obligation to ensure that no other service station would be constructed within a two block radius of the original H.S.L. station sites. We find in the record no document between LaKratt and either Exxon or H.S.L. which extended LaKratt's obligation to insert the December 1985 restrictive covenant into the "Acts of Sale" with LaKratt's other commercial property purchasers. The record, nevertheless, supports such a restrictive covenant. In pertinent part, the Act of Sale through which Berwick Bay acquired its property stated:

This sale is made and accepted subject to the following provisions which shall constitute covenants running with the land:

(1) The reservation of all minerals with waiver of surface rights, and the restrictions and conditions attached to the act of sale by Lake Forest, Inc. [LaKratt's successor] to Greek Ortho-

dox Community-Holy Trinity Cathedral dated February 26, 1975.

The relevant covenant in the Lake Forest/Greek Orthodox Act of Sale stated:

The land hereinabove conveyed in this sale shall not be improved or used for a drive-in gasoline service station or filling station for the storage, handling, sale or advertising of motor fuels, *during a period expiring December 31, 1985.* This covenant may be enforced by proceedings in law or in equity for a specific performance injunction, (mandatory or prohibitory) and for damages and may be enforced by any party and [sic] interest, including, but not limited to, the owner, operator or lessee of any service station site for whose benefit this covenant is made. (emphasis added).

Berwick Bay argues that the inclusion of the "December 31, 1985", language in the Lake Forest/Greek Orthodox contract was a mistake and that Lake Forest had no obligation to include such a provision. Without any documentary support, Berwick Bay asserts that Lake Forest must have operated under the mistaken assumption that the 1969 amendment for the Humble sites, which extended the covenant from December 31, 1982, to December 31, 1985, also applied to the H.S.L. sites. Exxon does not offer any explanation why Lake Forest extended the covenant, but merely stands on the language of Berwick Bay's Act of Sale. Further, at the preliminary injunction hearing, Exxon adduced the testimony of Herbert Stathes, one of the two Berwick Bay general partners, who conceded that he knew of the December 1985, restriction prior to Berwick Bay's purchasing the property.

■ Whether the December 1985, restriction ran with Berwick Bay's land is a disputed question, but this is a question more appropriately reserved for a decision on the merits of the appeal. In view of the language in Berwick Bay's Act of Sale and the knowledge Stathes possessed prior to purchasing the property, Berwick Bay has not demonstrated a likelihood of success on the merits of the appeal. It follows, there-

fore, that denying the motion for a stay of the preliminary injunction is justified.

IT IS ORDERED that the motion to stay the preliminary injunction issued by the district court is DENIED.