IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-11407
Summary Calendar
_____


RONNIE P. STEPHENS,

                                        Plaintiff-Appellant,

S & H CHEMICAL, INC.,

                        Plaintiff-Counter Defendant-Appellant,

                        versus

RHONE-POULENC, INC.,

                        Defendant-Counter Claimant-Appellee,

JIM HARDWICK; MONTY NEEB,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
(4:97-CV-540-Y)
_____

July 8, 1999

Before JOLLY, SMITH, and PARKER, Circuit Judges.

PER CURIAM:[*]

     This case arises out of a decision by Rhone-Poulenc, Inc.
("Rhone-Poulenc"), a manufacturer of agricultural products, to
terminate one of its distributors, S&H Chemicals, Inc. ("S&H").
In the resulting lawsuit, S&H claimed that Rhone-Poulenc violated
the antitrust laws and Rhone-Poulenc counterclaimed that S&H

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

breached their contract by refusing to pay invoices.  On appeal, S&H argues that the district court erred by: (1) miscalculating the period of time under the contract that interest was due on past-due invoices; (2) awarding attorneys' fees; and (3) granting summary judgment for Rhone-Poulenc on S&H's antitrust claims.  Because we find no error on the part of the district court, we affirm.

According to Rhone-Poulenc, it made a decision to terminate S&H, along with thirty other distributors, after it decided that it should terminate dealers with small sales volume.   S&H, on the other hand, argues that it was terminated after it refused a request by Rhone-Poulenc to raise its prices for "Prep"--a product applied to cotton plants for the purpose of hastening late-season boll development.  The evidence that S&H introduced to support this claim is testimony regarding a dispute between a representative of Rhone-Poulenc and S&H regarding S&H's pricing of Prep.   In addition, S&H asserts Rhone-Poulenc controls fifty percent of the market for Prep.

S&H sued Rhone-Poulenc in state court alleging breach of contract, antitrust violations, and tortious interference.  Rhone-Poulenc removed the case to a federal district court and filed a counterclaim against S&H for breach of contract (S&H had ceased paying its invoices after it was terminated).  S&H then paid its outstanding invoices but, despite a clause in the contract requiring it to do so, did not pay interest for the period that the amount owed was past due.  After discovery, the court granted

summary judgment in favor of Rhone-Poulenc and, under the contract, awarded interest on the invoices and attorneys' fees to Rhone-Poulenc.

The first two issues are both related to a factual allegation made by S&H and can be dispensed with easily. Rhone-Poulenc sent out a series of fifteen invoices, none of which were paid by S&H. Under the contract, Rhone-Poulenc was entitled to interest on the amount past due (i.e., not paid within thirty days of the date of the invoice) and reasonable attorneys' fees incurred while collecting that amount. In July 1997, Rhone-Poulenc filed its counterclaim seeking interest and attorneys' fees. At that time, fourteen of the fifteen invoices were past due. By August 1, 1997, all fifteen were past due and Rhone-Poulenc sent a summary invoice to S&H listing the total amount due. The district court awarded interest starting on August 1, the day that the last invoice was past due.[1] On appeal, S&H now argues that that summary invoice should be treated as an invoice under the contract. Thus, according to S&H, none of the invoices were past due until August 31, 1997.

The first issue S&H raises on appeal is whether the district court erred in calculating the amount of interest owed based on a period starting on August 1. The second issue is whether the

---

[1]Although many of the invoices were past due long before August 1, 1997, Rhone-Poulenc, according to its brief "for purposes of simplicity," agreed to forgive S&H the interest due on those invoices for the period before August 1.

district court erred in awarding attorneys' fees when the costs associated with filing a counterclaim were incurred before August 31, when S&H argues the invoices became past due. We find both arguments to be meritless. It is clear from the record that the summary invoice was only that--a summary. That Rhone-Poulenc sent S&H a reminder of past due invoices does not relieve S&H from paying the original invoices in a timely fashion. We therefore find no error on the part of the district court with respect to either its award of interest or attorneys' fees.

The third issue raised by S&H on appeal is whether the district court erred in granting summary judgment on S&H's antitrust claims. The district court held that because S&H had failed to present evidence of "conspiracy, agreement, or concerted effort to restrain trade or fix prices," S&H failed to meet its burden of producing evidence sufficient to show a violation of the antitrust laws. On appeal, S&H argues that the district court erred by requiring such a showing.

At the outset, we should note that the district court is absolutely correct that, under Section 1 of the Sherman Act, 15 U.S.C. § 1, the plaintiff must show the existence of "a contract, combination . . ., or conspiracy" that restrains trade. However, as S&H points out on appeal, no evidence of an agreement, combination or conspiracy is necessary to make out a violation of Section 2 of the Sherman Act. 15 U.S.C. § 2 ("Every person who shall monopolize, or attempt to monopolize, or combine or conspire

4

with any other person or persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony").

After a review of the plaintiffs' complaint and summary judgment pleadings, we cannot tell whether S&H intended to argue that Rhone-Poulenc's conduct violated § 2. The two principal theories that S&H argued below were that Rhone-Poulenc engaged in resale price maintenance and a refusal to deal. Resale price maintenance is a vertical agreement to fix prices and falls squarely under Section 1. So in order to show that Rhone-Poulenc engaged in resale price maintenance, S&H had to show that Rhone-Poulenc entered into some form of agreement with its distributors to set the prices for the resale of Prep. See Business Elec. Corp. v. Sharp Elec. Corp., 485 U.S. 717, 726 (1988). Since S&H does not challenge the district court's holding that it failed to produce evidence of a conspiracy, we need not consider its resale price maintenance theory. The other theory espoused by S&H is that Rhone-Poulenc's refusal to deal violated the antitrust laws. In general, a refusal to deal can run afoul of either § 1--if the conduct involves an agreement among several parties--or § 2--if the conduct amounts to monopolization or attempted monopolization.

Given the confused manner in which S&H pleaded its theories, it is unlikely that we would find fault in the district court ruling solely on the § 1 claims. To give S&H the benefit of the doubt, however, we will briefly address its § 2 claim. There are

5

two separate offenses under § 2: monopolization and attempted monopolization.

The offense of monopolization requires "two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." U.S. v. Grinnell Corp., 384 U.S. 563, 570-71 (1966). In this case, S&H has failed to present evidence that Rhone-Poulenc had monopoly power. The only evidence that S&H presents is its allegation that Rhone-Poulenc controls 50% of the market and that, standing alone, is simply insufficient evidence of monopoly power. See, e.g., Cliff Food Stores v. Kroger, Inc., 417 F.2d 203, 207 n.2 (5th Cir. 1969) ("It appears that something more than 50% of the market is a prerequisite to finding a monopoly").

The offense of attempted monopolization, on the other hand, requires two elements: "(1) specific intent to accomplish the illegal result; and (2) a dangerous probability that the attempt to monopolize the relevant market will be successful." Dimmitt Agri Industries, Inc. v. CPC International, Inc., 679 F.2d 516, 525 (5th Cir. 1982). In the case at hand, S&H has presented no evidence that, even if Rhone-Poulenc sought to monopolize the market, there is a dangerous probability that it would succeed. We therefore conclude that regardless of whether S&H raised a valid

6

§ 2 claim in its pleadings below, the district court did not err in granting summary judgment.

In this case, S&H's principal argument is that the district court erred by not considering whether Rhone-Poulenc's conduct violated § 2, as well as § 1, of the Sherman Act. A review of the pleadings in this case reveals that S&H's arguments with respect to a § 2 theory are far from pellucid. Even if we accept that S&H did raise this issue below, however, S&H has not presented the kind of evidence necessary to proceed to trial on a § 2 theory. S&H also argues that the district court miscalculated the interest due on past due invoices and inappropriately awarded attorneys' fees under the contract. Both arguments are based on an implausible characterization of a document sent by Rhone-Poulenc to S&H: S&H argues that the document is an invoice; Rhone-Poulenc argues it is a summary of all past due invoices. Because the document is clearly the latter, we find no error on the part of the district court. For the foregoing reasons, the judgment of the district court is

A F F I R M E D.

7